# CHARLESTON.

LAFFERTY v. LAFFERTY et al.

Submitted June 6, 1896—Decided December 12, 1896.

1. INFANTS—DECREE AGAINST INFANT.
   An infant is as much bound by a decree, and it is as final upon his rights while it stands, as an adult; but he has until six months after attaining twenty one years of age to show cause against it, by showing such error, fraud, or surprise as would reverse or set it aside at the instance of an adult.

2. INFANTS—DECREE AGAINST INFANT.
   An infant may show cause against a decree by bill, bill of review, supplemental bill in nature of bill of review, petition, or answer.

3. INFANTS—DECREE AGAINST INFANT.
   On application in any form proper, showing cause against a decree by an infant, the whole record will be examined to find such error, just as on an appeal by an adult.

4. DEEDS—FILLING BLANKS IN DEEDS.
   A blank in a deed left for grantee's name may be filled by agent under authority given by parol by the maker of such deed.

5. *Laches.*
   *Laches* forbidding relief. Ignorance of the fraud.

J. HOWARD HOLT for appellants, cited 4 H. & M. 450; 26 W. Va. 27; Bart. Ch. Pr. 130, 389; Code, c. 125, s. 38; 2 Munf. 196; 3 Munf. 358; 1 Lom. Dig. (Ed. 1839) 200; 10 Am. & Eng. Enc. Law, 7, 15, 4, 28, 26, 27, 29, 18, 19, 20, 21, 694, 696, notes; 3 Am. & Eng. Enc. Pl. & Pr. 579, 580; 74 Am. Dec. 291-96; Bish. Eq. (4th Ed.) 119; 1 Pom. Eq. Jur. 610; 1 Perry, Trusts, 138; 1 Lewin, Tr. (1st Am. Ed.) 163; 12 W. Va. 371, 381, 542; 19 W. Va. 166, 172, syl. pt. 3; Sto. Eq. Pl. §.407; 1 Bart. Ch. Prac. 334; 8 W. Va. 174.

J. B. McCLURE and ROBT. WHITE for appellees, cited Code, c. 132, s. 7; 1 Dan'l, Ch. Pr. (4th Ed.) 164-66, 195, 197,

42 783 / 44 636

42 783 / 47 305 / 47 307 / 47 764

42 783 / 50 361 / 50 400

42 783 / e 51 564 / 52 565

42 783 / 53 546

42 783 / 58 349

42 783 / 60 376

42 783 / 61 80 / f61 219 / f61 564

42 783 / 65 131 / 65 150

42 783 / 66 85 / 66 97

230, 285; 26 W. Va. 1, 10, 15, 59; 21 Gratt. 636, 645; 4 Min. Inst. pt. 2, pp. 1190, 1203, 1337; 10 Am. & Eng. Enc. Law, 694-97, 257; 9 W. Va. 492; 30 W. Va. 182, 185, 186, 358, 779, 784, 785; 41 Miss. 370; 31 W. Va. 9, 561; 1 Bart. Ch. Prac. 214, 216; Sto. Eq. Pl. § 160, n. 2; 6 W. Va. 369; 5 W. Va. 199; 3 W. Va. 176, 676; 13 Pet. 223; 14 W. Va. 66, 80; 39 W. Va. 121, 122; 34 W. Va. 229, 230; 24 W. Va. 95, 107; 6 Metc. 194; Code, c. 134, s. 5; Code, c. 130, s. 23; 37 W. Va. 366; 9 Am. & Eng. Enc. Law, 806, 807, 808; 1 Greenl. Ev. §§ 334, 337, 341; 18 W. Va. 695, syl. pt. 9; 32 W. Va. 17; 15 W. Va. 582; 2 Wall. 94; 95 U. S. 161; 3 Leigh, 353; 16 Mich. 41; Pom. Eq. Jur. § 817; 54 Am. Dec. 130-34; Amb. R. 645; 42 W. Va. 72; 37 W. Va. 201, 356, 368; 32 W. Va. 17, 325; 30 Gratt. 751.

Brannon, Judge:

James W. Lafferty brought a chancery suit against Jacob Lafferty and Lulu Lafferty to cancel a deed from Oldham to Elizabeth Lafferty for fraud in its execution, and obtained a decree canceling it; and then Lulu Lafferty, within six months after becoming of age, filed a petition showing cause against the decree, based on error in it, and obtained a decree setting aside the first decree; and then Sarah Thatcher, James W. Lafferty, and Jacob Lafferty filed a bill of review to reverse the second decree, which was dismissed; and then they appealed to this Court. It thus becomes necessary to inquire whether there is error in the first decree canceling the deed warranting the court in setting aside that decree upon Lulu Lafferty's petition showing cause against it.

The decree canceling the deed to Elizabeth Lafferty from Oldham was such a decree as prejudiced Lulu Lafferty, her sole child and heir, Elizabeth being deceased, for it took away from her lots conveyed by the deed to Elizabeth and descending on her death to Lulu. It is argued that it has nothing to do with her estate "as by foreclosure or otherwise, and does not require her to do anything. It simply decides she has no estate or interest in the property." Though she was not required to do any affirmative act, the decree was none the less destructive of her interest, as it de-

stroyed her title by descent, and passed it, by a commissioner appointed to convey it, to James W. Lafferty as much as if it had required her to convey it. Any decree which in any way prejudices an infant, as it would an adult, may be attacked by an infant within six months after majority, under the right to show cause against it given by section 7, chapter 132, Code 1891. But an infant can not annul a decree without cause, simply because of infancy, as the statute demands that he show cause. An infant is as much bound by a decree as an adult. It is just as final and conclusive as to matters properly adjudged, only that he is saved the right, without regard to limitation barring adults, until six months after his majority, without going to an appellate court, to show cause to the same court which rendered the decree why it ought to set it aside. That cause must be just what would relieve an adult from it— error in the record, fraud, or surprise. *Hull* v. *Hull's Heirs*, 26 W. Va. 1; Barton, Ch. Prac. 130; 10 Am. & Eng. Enc. Law, 694; *Pierce's Adm'r* v. *Trigg's Heirs*, 10 Leigh, 429; *Parker* v. *McCoy*, 10 Gratt. 604; *Zirkle* v. *McCue*, 26 Gratt. 517. The infant, if his cause against a decree be error of law in the case, may proceed by bill of review, or supplemental bill in the nature of a bill of review, showing error of law; and in such bill of review I do not think the infant would be confined to merely such matters, to show error, as appear on the face of the decree, as in ordinary cases; and he need not have leave of court to file it, as in ordinary cases of bill of review. *In re Hoghton,* L. R. 18 Eq. 573. He may proceed by original bill, for not only fraud, but for error of law. He may proceed by petition, which is but another name for a bill. He may introduce new matter against it, so it existed at the date of decree. He is given the broad right to show cause against it, and under any of these pleadings he is given relief co-extensive with the right. There seems to be great liberality in this matter of procedure. 1 Daniell, Ch. Prac. 164, 174; 2 Beach, Mod. Eq. § 883; *Loyd* v. *Malone* (Ill.) 74 Am. Dec. 179; *Kingsbury* v. *Buckner,* 134 U. S. 650 (10 Sup. Ct. 638); *Ewing* v. *Winters,* 39 W. Va. 490 (20 S. E. 572).

The ground of assault on the decree in this instance is er-

ror of law, and the pleading calls itself a "petition," but it makes formal parties, some of them new parties, and assigns errors in the record as cognizable on an appeal, and hence I regard it as a bill, or a supplemental bill in the nature of a bill of review, though called a "petition," and is entirely a proper pleading to review the decree under the authority above cited. What is in the name of a pleading, so it contain the proper matter to obtain the relief it asks? We can and ought to treat it as the proper pleading, though called another. *Martin* v. *Smith*, 25 W. Va. 579, 583. The law looks through names, and sees only the ⸠things—the real thing the name stands for. While on this subject I may say that an infant, within six months after majority, may file an answer making defenses not before in, and thus reopen the case. 1 Daniell, Ch. Prac. 173; Opinion in *Parker* v. *McCoy*, 10 Gratt. 604. He surely can introduce new defense, and it is immaterial, practically, how he does so. It is argued that, on the petition, which is full and well drawn, the court can not look into the depositions; the idea being that the petition is to be regarded as an ordinary bill of review. Obviously, on an application to show cause against a decree, for error of law, we can look into pleadings and evidence, just as on an appeal, in order to see whether there is error. But though new defense may be made against the decree, the cause shown against it must be cause existing at its date—not such as arises afterwards; the question being whether any cause existing at its date shows that the decree ought not to have been pronounced. *Walker's Ex'r* v. *Page*, 21 Gratt. 636, 645.

I come, now, to inquire whether there is any error in the decree canceling the deed. There is a question arising which is of importance and interest. The bill to cancel the deed alleges that Jacob and James Lafferty together bought the lots, and, as James had done certain work for his father, Jacob, and had paid part of the purchase money, he was to own them entirely, and the deed was to be made to him, and that he was hesitating whether to have them conveyed to his mother or to himself, and therefore Oldham had, at the father's request, executed the deed with a blank in it for the name of the grantee, and had committed

it to Criswell with instructions to him to insert such name as grantee as Jacob Lafferty should designate, and that, while it remained with Criswell, Elizabeth, the second wife of Jacob Lafferty, whose first wife had in the meantime died, had gone to Criswell, and, by the false statement that her husband had authorized her to have her name inserted in the blank as grantee, had caused Criswell to insert it. Now, it is proven by Criswell that the deed was so blank when it came to his hands, and that he inserted Elizabeth Lafferty's name on such representation. The question, then, arises, is this a valid deed? Could such blank be filled by an agent without authority under seal? That a deed without a grantee is no deed is elementary law and so is the rule that an agent to make a deed must be authorized by a sealed power. The whole includes all its essential parts, and essential parts are indispensable; and therefore, as it is said, it requires the same authority to make one of the essential parts of a valid deed—for instance, the insertion of a grantee—as to make the whole deed, and the authority to do so can no more be authorized by parol than authority to make a deed outright. Evidently there is a difference, which I need not enforce by argument, as it is self apparent. So it is different where one puts his name on a clear piece of paper, and gives one verbal authority to make a deed out of it, in his absence. *Duncan* v. *Hodges*, 17 Am. Dec. 734. Where a man makes a deed, complete in all respects save that it is blank as to the grantee, it evinces clearly an intent to pass the estate; and when he tells his agent to insert the name of the purchaser or such name as he may designate he evinces a full intent to pass it to either the purchaser or such other person; and nothing but the technical rule that an agent to make a deed must be empowered by deed stands in the way. The statute of frauds is satisfied, unless we are so technical as to make it be an instrument to further fraud and defeat intention. The law ought to rule so that solemn acts shall avail and execute the intention and further justice, rather than prove abortive at the bidding of argument which, while plausible, as based on general rules, is yet only technical, as applied in

the given instance. I know that the ancient rule required a deed to be complete, and would overthrow this deed; and yet Lord Mansfield, in *Texira* v. *Evans*, cited in 1 Anstr. 229, held that a writing made to borrow money, under seal, blank as to sum and payee, when the agent by oral authority filled the blanks, was a valid bond. Later English cases overrule that case, and hold such bond invalid. 2 Rob. Prac. 14. I know, too, that the Virginia court, in *Preston* v. *Hull*, 23 Gratt. 600, holds that a bond, perfect except as to a blank for the payee's name, placed in the hands of M. for borrowing money, who fills up the blank in the absence of the obligor, is not valid. The Court cites former Virginia cases as logically sustaining that holding, but a close analysis of them will disclose they do not, unless very remotely.

I admit that there is a very considerable American authority for the position that parol authority to fill such blank would not make the deed valid; but the greater number and the later cases, hold the reverse. Chief Justice Marshall, in the United States Circuit Court for Virginia (*U. S* v. *Nelson*, Fed. Cas. No. 15,862) held that an official bond, signed by sureties, blank as to date and penalty, and then signed by the principal, and the blanks filed, did not bind the sureties. But the surties gave no authority to fill the blanks, save as might be implied from their signing. The chief justice admitted the doctrine, doubtful in logic, and if tested by principles of justice administered usually by courts, that the intention of the parties should prevail, and admitted that the supreme court of the United States, in *Speake* v. *U. S.*, 9 Cranch, 28, had gone far in deciding that an obligation may be originally created by authority merely implied from sealing and delivery of a paper which, as then, could avail nothing, and he prophesied that the time would come when that court would completely abolish, in this respect, the distinction between sealed and unsealed instruments. That prophecy has been verified in the case of *Drury* v. *Fostor*, 2 Wall 24, in which Justice Nelson said: "Although it was at one time doubted whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better

opinion at this day, is that the power is sufficient." The same was said by Justice Field, in *Allen* v. *Withrow,* 110 U. S. 119, 128 (3 Sup. Ct. 517). The opinion in *White* v. *Railroad Co.,* 21 How. 578, is to the same effect. Mr. Dembitz, in 1 Dembitz, Land Tit, 242, thinks the old "doctrine not now recognized in most of the states, but is generally exploded as too technical to fit into modern American Law." Likewise Mechem, Ag. § 94. A long note in *Stahl* v. *Berger,* 13 Am. Dec. 669, citing many cases, expresses this as the later and better doctrine. Judge Redfield condemned the old rule, saying it was technical, rather than substantial, and said the prevailing current of American authority and the practical instincts and business experience and sense of our people are otherwise, undoubtedly. 1 Redf. R. R. 124. A late well considered case is *Cribbon* v. *Deal,* 21 Or. 211 (27 Pac. 1046) holding the modern rule. See 1 Am. & Eng. Enc. Law (21 Ed.) 954; 2 Jones, Real Prop. § 1328, and notes, citing cases both sides; *Upton* v. *Archer,* 10 Am. Rep. 266; *Busford* v. *Pearson,* 85 Am. Dec. 764; Bish. Cont. § 1168; 5 Am. & Eng. Enc. Law, 424; 1 Devl. Deeds, § 457; *McCleery* v. *Wakefield* (Iowa) 41 N. W. 210; 2 Rob. Prac. 12. An agent can be appointed by parol to deliver a deed, and why not to fill such a blank? Delivery is no less essential than the name of a grantee. We allow blanks in promissory notes to be filled—even notes to be wholly written under parol authority, where one signs his name on blank paper. *Orrick* v. *Colston,* 7 Gratt. 189; *Frank* v. *Lillienfeld,* 33 Gratt. 377. Is there not as much danger of fraud and perjury in that, as in allowing insertions in bonds and other deeds? So, filling this blank is no warrant for annulling the deed.

The deposition of Jacob Lafferty, widower of Elizabeth, was incompetent. He stated that his wife went to Criswell, and got the deed filled up in her name, and that he knew nothing about it, and never gave her any order to do so. This is not only material, but controling, as without it the false pretense and a statement of the dead wife could not be made out. Can he thus prove her guilty of crime, and blast her reputation when she is in the grave? In *Stein* v. *Bowman,* 13 Pet. 209, the court held that a wife, after the

death of a husband, can not prove declarations to disgrace him. The same doctrine is held in *White* v. *Perry*, 14 W. Va. 66, 81; *Smith* v. *Potter*, 65 Am. Dec. 198; Starkie, Ev. pt. 4, p. 709; and Re Buckman's Will (Vt.) 24 Atl. 252. True, no declaration of the wife is proven by her husband, but he proves her conduct of fraud and criminality. But a second reason for the incompetency of this evidence is that Jacob Lafferty was a defendant, and filed an answer joining in the attack upon the deed, admitting the charges against its validity grounded on his dead wife's fraud, alleged in the bill. Bill and answer sought to enforce his right against the dead wife's rights. In that answer he admits his obligation to James W. Lafferty, for work and money, and that he had agreed to let him have this property. It was, therefore, his cause, and section 23, chapter 130, Code 1868, says that a party shall not be examined in his own behalf in respect to any transaction or communication had personally with a dead person against his heirs, *etc.* It was in his own behalf he was examined. How do we tell whether it is in one's own behalf, under this section? If he has such interest in the suit or its result as would exclude him at common-law, his examination is in his "own behalf," under this statute; for remember that, while section 22 abolishes the incompetency of interest, yet section 23 makes exceptions from that change, and leaves the excepted cases to be tested by common-law, as we held in *Crothers' Adm'r* v. *Crothers*, 40 W. Va. 169 (20 S. E. 927). Clearly, the transaction is one between them within the meaning of the statute. *Anderson* v. *Cranmer*, 11 W. Va. 562, 575; *Owens* v. *Owens' Adm'r*, 14 W. Va. 88. I have not added a third ground of incompetency, that of the disclosure of confidential communication between husband and wife only because Lafferty does not give any affirmative declaration of his wife, so we can say it falls under the ban placed on disclosure of such communication. He only denies that he gave her authority. But it is not entirely clear that it does not come under this independent ground of exclusion. If so, that would also exclude it as such communication is as much protected from disclosure as before the statute on evidence.

*Laches.* The deed in question was recorded January 5,

1871, and the suit to impeach it was brought January 24, 1879. James W. Lafferty, the half-brother of Lulu, who sets up claim to the property, was twenty four years old when it was recorded. What excuse does he make for the delay? None, except that from 1869 to 1874 he was in the employ of the Baltimore & Ohio Railroad Company, and at home only occasionally. But he let five years go after 1874, when he returned home. His father, who seeks to take the property from his daughter for his son, was at home during the eight years from the recordation of the deed. He says he knew of his wife's having got the deed in from three to six months after she did so. Most remarkable that James W. Lafferty, who says he joined in the purchase of these lots between 1866 and 1868, should not know of this deed. It is dated April 1, 1870, and he says he knew it was in Criswell's office, awaiting for him to determine whether he would have his mother's or his name inserted as grantee. She died November 21, 1869. Strange that he did not then look a little after that deed, and have his name inserted! But he let ten years of carelessness go. Remarkable indifference for a young man of limited means. Strange that the father who claims to be the real purchaser and owner, and who is now so eager for the son to have the lots, did not tell him. They wait eight years from the recordation of the deed, and after the death of Lulu Lafferty's mother, whose lips are now dust and powerless to speak her defense, and after Oldham, the vendor, has gone to his long home, the only parties who could tell the other side, the suit was brought to divest Lulu Lafferty, then a child of about eight years, to take the property from her; and in two months from the institution of the suit her title is canceled—canceled, too, upon the sole evidence, as to all the material facts, not on disinterested testimony, but on the evidence of the brother and father of Lulu Lafferty. In *Trader* v. *Jarvis*, 23 W. Va. 100, it is laid down that delay in asserting a right, unless satisfactorily explained, even where there is no statute bar, operates in equity as evidence of assent, acquiescence, or waiver, especially in suits to set aside transactions for fraud or infancy, and that *laches* and neglect are always discountenanced in equity. Many of

our own cases assert this, even when the delay was shorter than in this case, as will be seen from *Whittaker* v. *Improvement Co.*, 34 W. Va. 229 (12 S. E. 507). See *Smith* v. *Thompson*, 54 Am. Dec. 130.

Will it be said James W. Lafferty did not know of the fraud? He does not say when he first knew of it. He gives no adequate explanation. His father knew it. How could James help knowing it? There was the open record. Not know it in a small town? Neither Lulu Lafferty nor her mother did a thing to conceal the deed, and that is a strong circumstance in their favor. *Badger* v. *Badger*, 2 Wall. 87. And the law is that, where one has means of knowledge of a fraud, or sufficient notice to put him on inquiry, it is enough to count time against him. Kerr, Fraud & M. 310. Where he has means of knowing or ascertaining, where he is put on inquiry, where ordinary prudence for his interests suggest that he inquire, he must do so, or else time runs. Opinion in *Thompson* v. *Whittaker*, 41 W. Va. 574 (23 S. E. 799) and cases there cited. And the death of Mrs. Lafferty and Oldham are potent against relief, because, of all others, they could give the other side. A court of equity can not take steps, under such circumstances, with any safety. The United States Supreme Court said: "The defense of want of knowledge on the part of one charged with *laches* is one easily made, easy to prove by his own oath, hard to disprove, and hence the tendency of the courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts. Especially is this the case where the party complaining is a resident of the neighborhood in which the fraud is alleged to have taken place." *Foster* v. *Railroad Co.*, 146 U. S. 99 (13 Sup Ct. 32). In the case of *Broderick's Will*, 21 Wall. 519, the same court, by Justice Bradley, said: "They do not pretend that the facts of the fraud were shrouded in concealment, but their plea is that they lived in a remote and secluded region, far from means of information, and never heard, *etc.* * * * Parties can not thus, by their seclusion from means of infor-

mation, claim exemption from the laws that control human affairs, and set up a right to open all transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with a knowledge of their status and condition, and of the vicissitudes to which they are subject."

I can not see why the answer of Sarah A. Thatcher was held insufficient. It gave no sufficient defense, it is true; but, as it contained a denial of a deed purporting to be the original deed from Oldham to Elizabeth Lafferty, tending to show that, whereas, the plaintiff, James W. Lafferty, and his father, claimed that a deed had been written by Oldham, and left with Criswell, who had filled in the name of Elizabeth Lafferty, this original certified deed repelled this pretense, being not in Criswell's handwriting, in body or as to grantee's name, and gave no evidence of insertion in different hand or ink, this being the original, and the bill having filed only a copy. Now, Thatcher had a right to disprove this under her answer. But, whatever effect that deed or the evidence to meet it might have on the hearing, how could it purge the reading of incompetent testimony when the first decree was given? It did not answer the charge of *laches*. The answer was never stricken out, though I so treat it. The error is immaterial on the question whether the decree setting aside the deed was erroneous.

Finding error in the decree annulling the deed, warranting the court in setting that decree aside on Lulu Lafferty's petition showing cause against it, we see no error in dismissing the bill of review to the second decree, and therefore affirm the decree dismissing the bill of review.