# CHARLESTON.

## WILLIAMS *et al. v.* MAXWELL *et al.*

### Submitted Feb. 2, 1898—Decided Nov. 23, 1898.

1.  FRAUD—*Judicial Sales—Setting Aside Sales.*
    To set aside a sale for fraud and conspiracy, suit must be brought within a reasonable time after the discovery of such fraud. (p. 307).

2.  LACHES—*Judicial Sales*
    One who delays three years after knowledge of all the facts attending a sale before bringing such suit is guilty of such laches as will debar him from relief. (p. 307).

3.  ATTORNEY AND CLIENT—*Judicial Sales.*
    An attorney for a client whose property is sold at judicial sale to satisfy liens and charges against it, who notified such client prior thereto of the time and terms of sale, and of the result there-

of soon after the sale and confirmation, and no objection was made thereto by the client, the relation of attorney ceased between the parties, as to the land itself, from the confirmation of the sale, and only continued so far as such attorney might have to do with the proceeds of the sale. (p. 310).

Appeal from Circuit Court, Tucker County.

Bill by George C. Williams and others against W. B. Maxwell and others. A decree was rendered, from which defendant Maxwell appeals.

*Reversed.*

C. WOOD DAILY, for appellant.

F. M. REYNOLDS and P. J. CROGAN, for appellees.

McWHORTER, JUDGE:

In 1887 a suit was pending in the Circuit Court of Tucker County in the name of the administrator of Mary C. Cameron against George C. Williams and others, to subject the estate, consisting of one thousand four hundred and fifty-four acres of land, to the payment of certain debts against said estate. Mortimer G. Williams, Lucy V. Hanson, Horace D. Williams W. H. Williams, Sallie L. Reynolds, and George C. Williams, heirs at law of said Mary C. Cameron, employed W. B. Maxwell as attorney to attend to their interests in said cause as against the claim of Gertrude Hocker; and the first five gave their joint note to him. dated June 8, 1887, for forty-two dollars, payable six months after date, and George C. Williams gave his individual note to said Maxwell for ten dollars, dated said June 8, 1887, and payable six months after date. The cause was referred to a commissioner to ascertain the debts against the estate, and report made, and the land decreed to be sold, and A. B. Parsons and J. P. Scott were appointed special commissioners to make the sale. The land was advertised to be sold on the 3d day of September, 1888. The record shows that it was put up on that day, and, not a sufficient bid being received, sale was postponed until the following day, September 4th, when it was sold at public auction to L. L. McCrum for the sum of three thousand two hundred and twenty-five dollars. McCrum paid the cash payment, amounting to one hundred and eighty-

seven dollars (being sufficient to pay the costs of suit and charges of sale), and gave his three several notes at six, twelve and eighteen months, with W. B. Maxwell as security, for the deferred payments.   In August, 1887, several of the other heirs sent notes to said Maxwell against the estate for collection, which were provided for in the decree of sale.   At February rules, 1892, George C. Williams, Mortimer G. Williams, Sallie L. Reynolds and T. S. Reynolds, her husband, W. H. Williams, Horace D. Williams, Lucy V. Hanson and James A. Hanson, her husband, and Martin V. Miller, administrator of Mary C. Cameron, deceased, filed their bill in the circuit court of Tucker County, against W. B. Maxwell, L. L. McCrum, J. W. Nihiser, James B. Reese, D. R. Leatherman, Cyrus H. Maxwell, and Albert Thompson, alleging that they were the heirs at law and administrator of Mary C. Cameron, daughter of George C. Harness, deceased; that in a partition suit among the heirs of said Harness, this parcel of one thousand four hundred and fifty-four acres of land was assigned to Mrs. Cameron (who, after the death of her husband, John J. Williams, father of the plaintiffs, intermarried with Dr. Cameron, who died leaving no children by her), and alleging the pendency of said suit, in which said land was sold by the administrator aforesaid; that W. B. Maxwell and purchaser, McCrum, entered into a fraudulent scheme and combination, whereby McCrum was to become the nominal purchaser of the land at the lowest possible price, and that Maxwell was to have a half, a controlling, or an entire interest in the property, and was to pay the purchase price, or a large part of it; that bidders were deterred from bidding by McCrum, and also by Maxwell, informing them that it was needless for them to bid, that McCrum was bidding solely for the heirs and proposed to buy it for them, and that, in consequence of such representations, outside bidding ceased, and the land was knocked off to McCrum at less than one-fifth its value; that Maxwell became McCrum's security on the purchase notes, and that McCrum has since the sale stated that he and Maxwell were partners; that decree was entered in said cause on the 9th day of September, 1889, confirming a report made therein by Commissioner J. J. Adams, ascer-

taining the debts against the estate and their priorities, including a claim of purchaser, McCrum, for three hundred and thirty-four dollars and ninety-four cents taxes set up by petition filed by appellant, Maxwell, which accrued before the sale, and adjudicating the rights of the parties therein, and showing that after payment of all the debts there remained the sum of one hundred and twenty-two dollars and thirty-seven cents to be paid to the heirs, and which was by said decree required to be paid to the parties entitled thereto; that, within three days after McCrum obtained his deed for the land, he conveyed same to defendants Nihiser, Reese, and Leatherman, and that in such conveyance the said W. B. Maxwell and his brother C. H. Maxwell joined in the deed of conveyance, showing that the Maxwells had two-thirds interest in the property; that McCrum conveyed his entire interest a short time afterwards, which was done in part consideration for the Cameron lands in the A. B. Parsons farm, to said Maxwell, "thus rounding out and fully consumating this fraudulent transaction," as alleged in the bill; that said heirs of Cameron employed said Maxwell to attend to their interests in the said suit; that they were all nonresidents of the State of West Virginia, except George C. Williams, who was still a resident of Cabell County, this State; that J. A. Hanson and H. D. Williams were the administrators of their mother's estate in Florida, where she died; that their said attorney directed a demurrer to be entered at rules to the bills before the same were matured, and, when said demurrers were overruled, he waived the right to answer on the part of defendants; that when said one thousand four hundred and fifty-four acres of land were sold it was worth from fifteen thousand dollars to twenty-five thousand dollars; that when the day of sale came there were bidders present who would have given from ten thousand dollars to fifteen thousand dollars for the land, and were there for the purpose of bidding, but were prevented from bidding for the reason before given, and the property was knocked off to McCrum at the price of three thousand two hundred and twenty-five dollars, less than one-fifth its value, at the lowest estimation; that plaintiffs were kept in profound ignorance of said sale until long afterwards; that

defendant Maxwell had receipted to the commissioners for moneys due certain of the plaintiff heirs ascertained by the decree as well as the balance due the estate of one hundred and twenty-three dollars and thirty-seven cents, to be distributed among them, which he had not paid over to the parties entitled to it; that McCrum and Maxwell sold the property to Nihiser and others for a consideration of nine thousand dollars, as expressed in the deed, the A. B. Parsons farm being estimated at seven thousand dollars, and notes given for the two thousand dollars; that in August, 1891, said Nihiser and others sold the timber on said land to Albert Thompson, together with another tract of about the same size, for sixteen thousand dollars; that plaintiffs were uninformed whether or not defendants Nihiser and others had knowledge of the fraudulent and corrupt methods whereby the said McCrum and the Maxwells acquired title to said land, but that they, as well as Thompson, were proper parties to the proceeding, and plaintiffs entitled to a full and complete discovery as to the information they had, and, if it should turn out that they had knowledge and information of the fraud, then the plaintiffs would be entitled to cancellation of the deeds, and to have the land reconveyed to them by defendants, together with an accounting on their part of all timber removed therefrom; that, as to defendant C. H. Maxwell, his knowledge and information, as well as his participation in said fraud, was full and complete, and, if it should turn out that Nihiser and others were innocent purchasers from the Maxwells and McCrum, then the plaintiffs were entitled to recover, by proper decree, full value of said lands from said McCrum and the Maxwells, and plaintiffs would be entitled to conveyance to them of the A. B. Parsons farm as part payment of the amount found due them; and praying for general relief, according to the allegations of their bill.

The defendants Reese, Nihiser, and Leatherman, and the defendants W. B. and C. H. Maxwell, and the defendant A. Thompson, filed their demurrers to the plaintiffs' bill, all of which demurrers were overruled. Defendants Nihiser, Leatherman, and Reese filed their answer, denying all fraud or any knowledge of fraud.     W. B.

Maxwell filed his answer, containing also a demurrer to the bill, denying all participation in the purchase of the land, and averring that McCrum was a *bona fide* purchaser, and denying all allegations of the bill setting up fraud against him, either on his part, or on the part of McCrum or C. H. Maxwell; averring that he was employed by plaintiffs for fifty dollars to defend the estate against the claim of Gertrude V. Hocker, which he reduced from one thousand four hundred and nine dollars and ninety-eight cents, ascertained to be due her by the commissioner, to the sum of three hundred and sixty dollars and forty-seven cents; that afterwards the plaintiffs, who were creditors of the estate, sent their claims to him for collection; denying that he tried to prevent the land bringing all it would bring, and alleging that all his actions were in good faith, and in the interest of his clients, the plaintiffs; that he never owned any interest in said lands until more than a year after they were purchased by McCrum; that he notified his clients through Hanson, the only one with whom he had communication, of the result of the sale, but failed to hear anything from them; that the sale was a fair one, and brought a fair price at the time. The defendant C. H. Maxwell filed his answer, denying all fraud on his part or that of the defendants, and all knowledge of fraud, and averring that the sale was fair and made in good faith; that while the land might have been sold for more at private sale, yet the price realized for it was, in respondent's opinion, fully up to the average price of lands sold at judicial sale; that he had no interest in the land until he bought it, more than a year after the sale to McCrum. Defendant McCrum filed his answer, denying all allegations of fraud, and alleging that the sale was fair; that he bought it in good faith; that if the defendants had come on in a reasonable time, by paying a proportion of the money he had paid and assuming that which was to become due, he would have given them an interest in the property; that neither of the Maxwells had any interest in the purchase, directly or indirectly, 'until they purchased an interest in it from him more than a year after his purchase. Defendant Thompson also filed his answer, denying all allegations of the bill charging fraud, or knowledge of fraud, upon him.

Depositions were taken and filed for plaintiffs and defendants. On the 20th day of June, 1894, the cause came on to be heard upon the bill, answers, and depositions, and the original record in the cause of Cameron's administrator against Williams and others, and upon the petitions and records of L. L. McCrum, Thomas Perry, and Lucy V. L. Hanson, which were heard together; whereupon the court was of opinion, upon the pleadings and proofs, that the plaintiffs were entitled to the relief prayed for in their bill, and that the judicial sale made by Commissioners Parsons and Scott in September, 1888, in said original cause, and the deed of the commissioners to McCrum for said land, should be set aside and avoided in favor of plaintiffs, as against defendants McCrum, W. B. Maxwell, and C. H. Maxwell; that the defendants Reese, Nihiser, and Leatherman were innocent purchasers of said land, without notice of fraudulent acts of defendants McCrum and Maxwells, and that they were entitled to said land, and that the sale of the timber sold to defendant Thompson could not be affected or impaired, but that plaintiffs were entitled to have said McCrum and W. B. Maxwell account to them for the full price of the land they sold to Reese, Nihiser, and Leatherman, with its interest; and the cause was referred to Commissioner W. J. Conley to ascertain the purchase price paid by Reese and others to the defendants McCrum and Maxwells, with its interest, and the total price paid by McCrum to the commissioners for said land, with its interest, and the difference between the two sums, and to ascertain the amount of money paid to W. B. Maxwell by the said commissioner belonging to plaintiffs, and received by him as their attorney, after allowing him for all proper disbursements made by him, and stating the amount due to each plaintiff, and in what manner due, whether as heir or creditor, and to ascertain and report the value of the Parsons farm of three hundred and twenty acres conveyed by Reese and others to McCrum and Maxwell and his brother, and its annual rental value. Commissioner Conley filed his report, to which various exceptions were taken by both plaintiffs and defendants.

The cause came on to be heard on the 21st day of June, 1895, upon all the papers, orders, and decrees, and upon

said report and exceptions thereto, and the court held that
plaintiffs, by reason of their laches in instituting the suit,
were not entitled to charge against and recover, from the
defendants C. H. Maxwell and the administrator of L. L.
McCrum, anything by reason of the matters set up in
their bill, but that, by reason of the relationship of attor-
ney and client that existed between them and the defend-
ant W. B. Maxwell, they were entitled to recover from him
as therein set forth, and ascertained that there is due
from him, besides the moneys which he collected in the
cause for the heirs against the estate, aggregating the
sum of seven hundred and forty-two dollars and seventy-
two cents due to certain of the plaintiffs as in said decree
specified as creditors of the estate, and one hundred and
twenty-three dollars and thirty-seven cents, the surplus to
be distributed among all the heirs as provided by the de-
cree of September, 1889, the aggregate sum of four
thousand and thirty-six dollars and forty-four cents, includ-
ing interest to the date of the decree, for which aggregate
the plaintiff heirs jointly were entitled to a personal decree
against said W. B. Maxwell; from which decree the de-
fendant W. B. Maxwell appealed to this Court, assigning
several errors.

It is insisted by appellant and his co-defendants L. L.
McCrum and C. H. Maxwell that the bill is multifarious,
and should have been dismissed on demurrer for that rea-
son, and it is contended by defendant McCrum that he is
brought in as a defendant upon a record with a large por-
tion of which he has had no connection whatever. The
matters at issue in this suit all grew out of the suit of Cam-
eron's administrator against Williams and others. The
bill seeks—First, to set aside the sale of the one thousand
four hundred and fifty-four acres of land to McCrum on
the ground of conspiracy and fraud, and to have the land
reconveyed to them, or, in case it had passed into innocent
hands without notice of fraud, that the true value be ascer-
tained, and a decree rendered therefor against the Max-
wells and McCrum, and, if plaintiffs so elect, that the A.
B. Parsons farm, taken by the purchaser of the one thous-
and four hundred and fifty-four acres in part payment of
the price of the timber sold from said one thousand four

hundred and fifty-four, acres be conveyed to plaintiffs as part payment of the amount due them from the defendants, to be ascertained in the cause; second, to require a strict accounting for, and to recover from the defendant W. B. Maxwell, certain moneys collected by him for certain of the plaintiffs, as their attorney, from the proceeds of said sale in said cause. As to these claims the plaintiffs had adequate remedy at law, and the demurrer should have been sustained as to that part of the bill. *Gay* v. *Skeen*, 36 W. Va., 582, (15 S. E. 64), (Syl. point 2); *Morgan* v. *Morgan*, 42 W. Va., 542, (26 S. E. 294), (Syl. point 1).

Defendants also allege as grounds of demurrer that plaintiffs in their bill allege no sufficient excuse for their delay in instituting this suit, having delayed it between three and four years, and until the rights of third parties had intervened; because plaintiffs did not bring or offer to bring into court, or even pay as the court might direct, the money paid out by McCrum, the purchaser of the land from the commissioners, nor the money alleged in the bill to have been expended by the defendants Maxwell; and because plaintiff should have proceeded by bill of review, or by petition for rehearing in the original cause in which said land was sold, to have the sale set aside. The authorities agree that it is utterly impossible to lay down any rule or abstract propositions as to what constitutes multifariousness, which can be made universally applicable. 1 Barb. Ch. Prac., 256. In *Dunn* v. *Dunn*, 26 Grat., 291, 295, it is held that a bill is demurrable for multifariousness; and cites Story, Eq. Pl. § 271: "A bill should not be what is technically termed 'multifarious;' for, if it is so, it is demurrable, and may be dismissed by the court of its own accord, even if it is not objected to by the defendant. By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." Note to the same section: "Multifariousness must be objected to by the defendant on demurrer, and cannot be objected to by him at

the hearing.    But the court may, however, take the objection at the hearing *sua sponte;* for the court is not bound to allow a bill of such a nature, although the parties may not take the objection in season."

The principal allegation of the bill, giving excuse for the delay in bringing this suit, is in the following words (referring to the sale of the one thousand four hundred and fifty-four acres of land sought to be set aside): "Of this sale these plaintiff heirs were kept in profound ignorance until long after, and plaintiff Miller, having been appointed as administrator solely on account of his official position as sheriff, had never paid any attention whatever in the matter."    While this allegation is hardly as definite as it should be, perhaps, and fails to show the length of time they were so kept in ignorance of such sale, or to show what efforts, if any, they made to ascertain the facts, yet it makes very definite charges of fraud and conspiracy to wrong the plaintiffs, and is deemed sufficient to warrant an investigation.    More than three years had elapsed after the sale before this suit was brought, and yet it is admitted by plaintiff M. G. Williams, in his testimony, that he knew of the sale from McCrum himself a few days after the sale, that McCrum had bought the land, and that the sale had been confirmed, and that he had a talk with appellant about it.    This sale was made and confirmed in September, 1888.    This suit was instituted in Febuuary, 1892.    The record shows that Hanson, the husband of one of the heirs, and the only one with whom appellant was in correspondence, and who had employed appellant as attorney in their behalf, was informed of the time the sale was to take place; that he informed appellant that he would be present at the sale; that he could not get the balance of the heirs to do anything; and that he would have to buy it himself.    He failed to attend the sale, and was informed by appellant immediately after the sale of the result of the sale, and that if he would come on and take the land at what it cost the purchaser, repaying to him the purchase money which he had paid out, and securing the balance thereafter to become due he could do so. The property was not purchased by McCrum for plaintiffs. He was not authorized to bid for them, nor was any per-

son.  He could not have required them to take it off his
hands.  Although the plaintiffs knew immediately after
the sale all about it, the price it brought, and the offer to
them to take the property on the terms of the sale,
yet they virtually repudiated the trust, if any was
created in their favor, and with full knowledge of the sale
and the price the property brought, and the confirmation
of the sale, stood by more than three years after the con-
firmation without taking any steps to correct the wrong
of which they complain.

The plaintiff M. G. Williams in his testimony says that a
few days after the sale he saw the purchaser, McCrum, who
said to him: "You owe me a set-up for buying your Came-
ron land;" that he asked McCrum if the sale had been con-
firmed, and he said it had; and he also states that he had
an interview with appellant concerning the sale some time
after the sale of the land, and charged him in said inter-
view with fraud in relation to the sale.  So it appears that
plaintiffs had notice of the fraud, if any there was, imme-
diately after the sale.  In *Whitaker* v. *Improvement Co.*,
34 W. Va., 217, (12 S. E. 507), (Syl. point 2): "He who
elects to set aside his contract for fraud must bring suit for
the purpose, without unreasonable delay, after discovery
of the fraud, unless there be good reason to excuse it; oth-
erwise his delay will deny him relief."  In this 34 W. Va.
and 12 S. E. case, the question of laches is well  discussed.
In *Newcomb* v. *Brooks*, 16 W. Va., 32, it is held that a suit
to avoid a sale for fraud must be  brought in a reasonable
time, though the property remains in the hands of the
fiduciary.  In *Strong* v. *Strong*, 102 N. Y., 69, (5 N. E.
799), it is held that the right to rescind a contract for fraud
must be exercised immediately upon discovery thereof,
and any delay in doing so, or the continued use and occu-
pation of the property received under the contract, will be
deemed an election to confirm it.   Also, in *Schiffer* v. *Dietz*,
83 N. Y., 300:   A vendee entitled to rescind a contract for
fraud must act promptly on discovery of the fraud, and
restore, or offer to restore, the property.  By dealing with
it as owner after such discovery, deprives him of this rem-
edy.   In *Hunt* v. *Blanton*, 89 Ind., 38, an offer to rescind a
purchase of land for fraud, made five months after the

conveyance, without any reason for the delay, comes too late. Mr. Justice Lawrence, in delivering the opinion of the court in *Cox* v. *Montgomery*, 36 Ill., 396, says: "In a country where the values of real estate change as rapidly as in Illinois, it would be clearly unwise to permit a purchaser of land to retain it for nearly 18 months after the discovery of fraud before filing his bill to rescind. This is an unreasonable delay, which a court of chancery cannot tolerate." This case was reversed and remanded, with leave to appellee to explain, if he could, the delay in the institution of his suit. In *Sieveking* v. *Litzler*, 31 Ind., 13: "The party claiming to rescind a contract of sale on account of fraud must act at once upon discovery of the fraud, and he cannot postpone discovery by neglect to use ordinary diligence. This rule must be strictly enforced, where the law affords a complete remedy in damages." In the case at bar there is no evidence to show that there was any effort whatever on the part of plaintiffs to inquire into the matter of fraud, if any there was, but it is shown that they knew of the whole transaction within a few days after the sale; but it seems that there was a great increase in the value of property of that character, and in that location, in the course of two or three years after the judicial sale,— a tramway having been projected to run into the neighborhood of the land, which added immensely to its value. Touching this same question, in *Grymes* v. *Sanders*, 93 U. S., 55, the syllabus is as follows: "(2) Mistake, to be available in equity, must not have arisen from negligence where the means of knowledge were easily accessible. The party complaining must have exercised, at least, the degree of diligence 'which may be fairly expected from a reasonable person.' (3) Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be as conclusively bound by the contract as if the mistake or fraud had not occured. This applies peculiarly to speculative property, which is liable to large and constant fluctuations in value. (4) A court of equity is always reluctant to re-

scind, unless the parties can be put back in *statu quo.* If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it." 1 Pom. Eq. Jur. § 419: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. The principle has in fact two aspects, one of them wholly independent of any statutory limitations, and the other with reference to such statute. "In *Trader* v. *Jarvis,* 23 W. Va., 100, (Syl. point.2); "Delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiescence, or waiver, and especially is such the case in suits to set aside transactions on account of fraud or infancy. Laches and neglect are always discountenanced by a court of equity."

It is clearly shown that neither of the Maxwells had any interest in the purchase at the time of the sale, nor until more than a year after the confirmation, and the plaintiffs utterly fail to establish their allegations of conspiracy. There was no concealment in the actions of the defendants McCrum or the Maxwells. Their acts were all frank and open. Plaintiffs wholly fail to prove any conspiracy or any intended fraud on the part of the defendant McCrum, the purchaser, or either of the Maxwells. The circuit court held that, by reason of the laches of plaintiffs in bringing their suit, they were not entitled to charge against, and recover from, defendants McCrum and C. H. Maxwell anything by reason of the matters set up in the bill, but that, by reason of the relationship of attorney and client that existed between them and defendant W. B. Maxwell, they were entitled to recover from him, as set forth in the decree. If W. B. Maxwell performed his whole duty to plaintiffs, his clients, in relation to the sale, as it appears from the record he did, having informed them of the time and terms of sale prior thereto, and having assurance from them that they would be present to attend the same, after the sale was made and confirmed, of which

they were advised, Maxwell had nothing further to do as attorney, unless plaintiffs within a reasonable time took some action in relation to the sale, or raised objection to, or protest against, it; but, having remained silent, his relation of attorney for them ceased so far as the land was concerned, and the moment such relation ceased he was at liberty to purchase the land or an interest in it; and if by their laches they were not entitled to relief against Mc-Crum, the purchaser, how can they be injured by Maxwell purchasing an interest in the property from McCrum, who is entitled to hold it? The exceptions to the commissioner's report relate to the value of the land, the profits made upon it by the defendants, the rental value of the Parsons farm, etc.; which, in the view of the case I have taken, are immaterial.

For the reasons herein stated, decree complained of is reversed and annulled; and, the Court proceeding to render such decree as the circuit court should have rendered on the hearing of the cause, it is adjudged, ordered and decreed that the bill in this cause be dismissed, but without prejudice to the plaintiffs to take such proceedings as they may be advised to take against the defendant W. B. Maxwell to recover the various sums of money collected by him for plaintiffs in the said cause of Cameron's administrator against Williams and others, the collection of which was sought to be enforced in this cause, and that the defendant W. B. Maxwell recover his costs by him expended in his defense of this suit in the circuit court of Tucker County.

*Reversed.*