# CHARLESTON.

SEYMOUR *et al. v.* ALKIRE *et al.*

Submitted September 7, 1899—Decided December 9, 1899.

1. DECREE—*Infant—Time.*
   An infant has six months after majority to show error in a decree. (p. 305).

2. DECREE—*Mistake—Laches.*
   One who would set aside a decree by reason of mistake must proceed within a reasonable time after knowledge of it, else he will be barred of relief, by laches. (p. 307).

3. PRESUMPTION—*Payment—Limitation.*
   The law raises a presumption of payment, where the statute of limitations does not apply, after lapse of twenty years, which will be conclusive unless rebutted by distinct proof. (p. 310).

4. LIEN—*Mistake - Fraud—Equity.*
   A lien discharged or released through fraud or mistake will be restored in equity unless innocent third parties are affected. (p. 307).

Appeal from Circuit Court, Mineral County.

Bill by Susan B. Seymour and others against Nimrod Alkire and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

F. M. REYNOLDS. for appellants.

ALBERT A. DOUB and TAYLOR MORRISON, for appellees.

BRANNON, JUDGE:

In December, 1853, Brady brought a chancery suit in the circuit court of Hampshire County, subsequently transferred to the circuit court of Mineral County, against the estate of Wheeler, the object of which was to assert a debt in favor of Brady, and sell the lands of the deceased for payment of the debt of Brady, and those of others. A decree was made subjecting several tracts of land to sale, and appointing White and McDonald special commissioners to sell. In March, 1856, a sale was made of a tract of land by said commissioners to Alkire, which was confirmed by decree 17th of September, 1856. The terms of sale by the decree were part cash, part in thirty days, and the balance in three annual installments. The report of this sale stated the price as six thousand, seven hundred and fifty-five dollars, but the cash and bonds for unpaid purchase money made up only five thousand, seven hundred and fifty-five dollars, a discrepancy of one thousand dollars. It is claimed in this case that three of the bonds were taken for one thousand, three hundred and fifty -five dollars and forty-one cents each, instead of one thousand, six hundred and eighty-eight dollars and seventy-five cents. By decree of 17th of September, 1857, leave was given to Alkire to pay all the purchase money before maturity, and it directed the commissioners, on such payment, to convey the land to Alkire, and he paid off the bonds; and the commissioners conveyed the land to him by deed dated the 27th of April, 1858, stating the price as six thousand, seven hundred and fifty-five dollars. In October, 1869, an order was made referring the case to a commissioner to report what debts of Wheeler remained unpaid, what funds were in the special commissioners' hands, what had been loaned out, and to whom; but the reference did not refer the matter of the said mistake. The commissioner filed a report in 1872, in which he reported it as a mistake. No action was taken on this report. In October, 1879, a rule was awarded against Alkire to show cause why he should not pay the one thousand

dollars aforesaid, and reference was made to a commissioner to resettle the accounts of White and McDonald, Commissioners, providing for notice to Alkire, as purchaser, and as a person entitled to some of the moneys arising from the sale; but it in no manner—not even by a general clause to report any pertinent matter —required any examination as to the alleged mistake of one thousand dollars.    Depositions were taken under this reference, but not till July, 1885.    The commissioner reported in August, 1885, the same as former report.    No action was taken on these reports till the decree of 11th July, 1898, appealed from in this case.    In May, 1886, Susan B. Seymour, a daughter of Wheeler, and one of his heirs, entitled to the proceeds of sale after debts, asked leave to file a bill of review to rehear and correct the decrees of 17th of September, 1856, and 17th of September, 1857, assigning as error the said matter of one thousand dollars; but the court refused to allow it to be filed, 6th of May, 1886.    In March, 1887, Mrs. Seymour presented a pleading called an "amended and supplemental bill," and was allowed to file it, and she was allowed to become plaintiff in the case; having been a defendant as a child of her deceased father, Wheeler.    This bill alleged the error or mistake aforesaid, and prayed that Alkire be required to pay the one thousand dollars, and for general relief.    The case was heard in July, 1898, and a personal decree rendered in favor of Mrs. Seymour against Alkire for three hundred and thirty-three dollars and thirty-three cents, with interest from the 7th of March, 1856.    From this decree, Alkire appeals.

There is at once apparent an error for which the decree must be reversed, and that lies in the fact that it is a purely personal decree against Alkire.    Even though there is a lien on the land for the demand, as a personal liability it would be barred in five years, as Alkire gave no note; for the mere personal debt may be barred, and other property of the debtor not liable, though the specific property is still good from the lien upon it.    *Criss* v. *Criss*,  28 W. Va. 388; *Evans* v. *Johnson*, 39 W. Va. 299 (19 S. E. 623), 23 L. R. A. 737.    But we must pass on the merits of the case in other respects.

The decree confirming the sale was surely a final decree,

discharging Alkire from any further participation in the case as purchaser. *McKinney* v. *Kirk*, 9 W. Va. 26. The decree confirmed the sale when there was a discrepancy between the amount of the purchase price as given in the report of the sale, and the amount shown in the same report by cash payment and bonds for the deferred payments; and later decrees directed a deed to the purchaser on payment of the bonds, thus aggrieving Susan Wheeler by passing title to the land, and discharging the lien without payment of all the purchase money. She had a remedy. Being then, likely, an infant, she could have sued out a writ of error, or used a bill of review or original bill while an infant, by a next friend, or within six months after full age. *Lafferty* v. *Lafferty*, 42 W. Va. 783 (26 S. E. 262); *Harrison* v. *Wallton's* Ex'r, (30 S. E. 372), 95 Va. 721, 41 L. R. A. 703. When she became of age, the record does not show. She was an infant December 5, 1853. She was adult before December 5, 1874. She took no steps to correct this error until May, 1886, when she presented a petition assigning this error in the decrees of 17th Septeber, 1856, and 17th of September, 1857, and asking the correction of the decrees, and that Alkire be required to pay the one thousand dollars. This was a bill of review or petition for rehearing,—call it which you will. The court refused to allow it to be filed, and if there was error in the dcrees, it was error to refuse that bill of review, and should have been corrected by appeal. I think it was error to confirm the sale, and direct transfer of title, and discharge lien before the amount of purchase money shown by the record was paid; and this being so, it was to be corrected by appeal or bill of review, or some other process to show cause against it by an infant. We have to take one view or the other,—either that the purchase money was six thousand, seven hundred and fifty-five dollars, and thus show error in receiving less and passing title, or that that sum was not the sum, but that the cash and bonds showed the true sum, five thousand, seven hundred and fifty-five. In the latter case there is no wrong. It is on the former that relief is asked. Then it was error correctible otherwise. The right by any mode to show error in those decrees was gone when the bill of

review was presented. The rule against Alkire to show cause why he should not pay this one thousand dollars as balance of purchase money would not lie in the case, because he had paid every cent required by the decree, and he had received his deed, many years before. Alkire had been discharged from the case. The rule takes the record as it is. Error of law could not be reversed by it. As, then, any error predicated on the record, which is the most that can be claimed to sustain the rule, was beyond recall, this mere rule could not be used, as plainly shown by the opinion in *Glenn* v. *Blackford*, 23 W. Va. 182. A rule is proper where no new facts outside the record are to be litigated,—where the title has not passed. Here the record, including the deed, showed payment. The case required something to obviate that deed. No note or anything showed that Alkire had not complied with the requirement of the decree. It required a bill to allege mistake or other fact not shown by record, if not error of record, and giving the party a chance to repel the basis on which relief was asked. A rule does not do this. A rule could not be used to reverse the decree and nullify the deed.

But while I think that the decrees and refusal of the bill of review are conclusive against relief by original bill, which cannot correct error in law, and thus the case ends here, still let us look at the bill called an "amended and supplemental bill." It cannot be treated as in the old case. That was ended. The bill was not germane to its cause of action. We must therefore regard this as an original bill, on new matter, to correct a former decree, and compel payment of the one thousand dollars, on the ground of mistake. If the object be to subject Alkire to a personal demand,—and such is the only object of the bill, judged by its specific prayer,—it is barred, again and again. The statute begins from the date of the mistake(1856), not from its discovery, in the absence of fraud. *Shriver* v. *Garrison*, 30 W. Va. 456 (4 S. E. 660); Wood, Lim. Act. § 119, note; *Bickle* v. *Chrisman*, 76 Va. 678; 13 Am. & Eng. Enc. Law, 730. Alkire had no contract with Mrs. Seymour,—only with the court,—and action for money payable to a receiver is barred like any other case. The sta-

tute does not except it. *Laidley* v. *Smith*, 32 W. Va. 387 (9 S. E. 209). But it is claimed there was a lien on the land, and it was discharged by the alleged mistake, and should be restored. A mortgage or other lien thus discharged will be restored in equity where no third party's right intervenes. 1 Jones, Mortg. § 966. But Mrs. Seymour knew of this mistake as early as 1872. It was shown by record from 1856, open to every one. One with means of knowledge cannot plead ignorance of mistake or fraud to excuse laches. *In re Broderick's Will*, 21 Wall. 519, 22 L. Ed. 599, cited; *Lafferty* v. *Lafferty*, 42 W. Va. 792 (26 S. E. 262). The bill asks no such specific relief as the assertion of a lien on land, but there is a prayer for general relief; and if the mistake were established, and relief not lost by time, such relief might be had under it, the facts stated warranting it. First, under this head, we must see whether the mistake exists. To show a mistake in a settlement or instrument, evidence must be clear, convincing, beyond reasonable controversy. *Robinson* v. *Braiden*, 44 W. Va. 183, (28 S. E. 798). The burden is on him charging mistake, not on the other party to disprove. The particular facts must be clearly shown (*Calwell* v. *Caperton's Adm'r*. 27 W. Va. 397; *Jarrell* v. *Jarrell*, *Id.* 743; 15 Am. & Eng. Enc. Law, 65); especially where the mistake is in solemn judicial proceedings, and especially, also, where a long time elapsed after the mistake till its investigation, as here (*Weidebusch* v. *Hartenstein*, 12 W. Va. 760). Time obscures the memory, though witnesses of the transaction yet live. In a report of a commissioner returned in 1872, this mistake is stated. It was not included in the matters referred to him. The evidence on which he made the suggestion does not appear. Under an order, 24th May, 1879, a commissioner was directed to report on specific matters, not including this, even under a general requirement to report matters pertinent. Nothing was done under this till 23d July, 1885, and at that date depositions were taken, including that of Special Commissioner White. He, of all others, would know most of it, having made the sale. He forms an opinion (quite plausible) that the mistake was made in taking notes for too little, by one thousand dollars, but he forms or deduces it from

some old papers. He does not state it as fact from recollec-
tion, and declines to do so. He said: "The transactions
were many years ago, and the war intervening, and many
events in my life happened. Of course, I have no recollec-
tion of the facts themselves." But he was, in opinion, sat-
isfied of it from the papers, argumentatively. He in sev-
eral places pleads his inability to remember things con-
cerning the money matters in the case, though he had
charge of those matters. When asked the important ques-
tion whether he could state from recollection the price at
which Alkire purchased, he answered: "I cannot state
any more than the papers show. I believe the mistake oc-
curred in the manner I've stated,—not bearing in my
memory the actual amount the tract sold for. I can't state
that Mr. McDonald, in writing the reports (of sale), didn't
make a mistake in writing the price; and they were signed
in a hurry, and afterwards taken for granted to be cor-
rect . Such a thing might have been." Three notes were
found by witness in Alkire's possession years after the
sale,—three only; but the War raged with fierceness in
Hampshire, and Alkire swears that his papers were lost.
He says no such mistake was made, and he had paid every
cent due from him. A witness (Armstrong) who had some
connection with paying money to the commissioners for
Alkire is dead. The evidence of Commissioner White is
the strongest showing in the case, and he is careful to say
it is mere opinion,—inference from what papers he had,
not actual recollection. Some of his papers were lost.
Twenty-nine years from the mistake to the taking of this
testimony, and the Civil War and its sorrows and distrac-
tions intervening, can a court, after so long a time, on such
vague, inconclusive, contradictory testimony, put on Alkire
this burden? Can we take the step safely? Very strange
this mistake was not discovered for so many years,—for
ten or fifteen years. Those depositions are, however, not
competent evidence. They were taken, more than two
years before the supplemental bill was filed, before a com-
missioner executing an order of reference about other
matters, which did not touch this subject, either specific-
ally or under a general clause. They were objected to.
In addition, the record is not sure evidence. The strong-

est item shown by it is that the cash is just five per cent. of six thousand, seven hundred and fifty-five dollars, as required by the decree of sale; and yet this is not infallible, as a wrong figure, among other sales and calculations, might have got into the head of the commissioner. The report states the price at six thousand, seven hundred and fifty-five dollars, but the notes and cash give a different version. Which version shall we take? But say that the mistake was made. Then time and laches forbid relief. The mistake was in 1856, and it was decreed upon in 1898. Some twenty-three years passed before that rule, if it could be considered as an effort to correct the mistake,— thirty-one years till this bill was filed. A part of this time Mrs. Seymour was an infant. When she became of age, she does not say or show. If she wants the benefit of infancy, she must show its term. She became of age prior to 1874. She knew of the mistake in 1872, at latest. She allowed thirteen years after that, at least, to pass before she filed her bill. Even where infancy is used to excuse laches, lapse of time subjects the evidence to doubt, and necessitates strict proof and caution. 12 Am. & Eng· Enc. Law, 552. The laches is great and inexcusable, and forbids relief. Even in case of fraud, diligence must be used to repair it. So in case of mistake. *Williams* v. *Maxwell*, 45 W. Va. 297 (31 S. E. 909); *Trader* v. *Jarvis* 23 W. Va. 100. "Where a party desires to rescind on the ground of mistake or fraud, he must, upon discovery of the facts, at once announce his purpose, and adhere to it." *Grymes* v. *Sanders*, 93 U. S. 55, 23 L. Ed. 798; *Whittaker* v. *Improvement Co.*, 34 W. Va. 217, (12 S. E. 507). And here there is another doctrine forbidding relief: If you take the rule into consideration, not a thing was done under it for twenty years. The bill was filed in 1887, and nothing done till 1898. The commissioners' report lay from 1872, unacted on, till 1898. "In a court of equity, it is not only required that claims should be brought forward in a reasonable time, but that they shall be prosecuted with reasonable diligence." Judge Moncure in *Crawford's Ex'r* v. *Patterson*, 11 Grat. 374. But in addition to such laches, there is the presumption of payment after lapse of twenty years. The one thousand dollars would

be due in thirds in 1857, 1858, 1859,—from twenty-eight to thirty years before the bill filed. "The presumption of payment from lapse of time is a presumption of law, and is conclusive unless rebutted by distinct proof." 1 Jones, Mortg. § 915; *Camden* v. *Alkire*, 24 W. Va. 674; *Edwards* v. *Chilton*, 4 W. Va. 352.

It may be that real justice is not done in this case, but the great length of time and laches and staleness of demand deny relief. Time must give rest, repose, and finality to the liabilities and cares of man. The effort is to put on an old man, more than three score and ten, ready for the grave, a large debt, with its accumulation of interest, after a period that has carried off more than a generation, for an alleged mistake more than forty years old. The Code (in chapter 104, sections 4, 17) will not tolerate an action, even in case of infancy and coverture, longer than twenty years, in any event, from accrual of cause of action; showing the policy of having an end of things at some time. Decree reversed, and amended and supplemental bill dismissed

*Reversed.*