# CHARLESTON

## COFFMAN V. VIQUESNEY.

### Submitted February 23, 1915.   Decided March 30, 1915.

1. NEW TRIAL—*Evidence—Erroneous Verdict.*
   If the issues of fact do not depend wholly upon conflicting testimony of witnesses, but also upon facts and circumstances, admitted to be true or clearly proven and not denied, which are controlling in their character and inconsistent with the testimony of witness for one of the parties, and the jury renders a verdict, disregarding such facts and circumstances, the court should, on motion, set it aside as being contrary to the great weight of evidence. (p. 86).

2. CONTRACTS—*Fraud—Defense to Contract—Waiver.*
   A party who relies on fraud to defeat a contract must act with

due diligence after the discovery thereof, or after he has had opportunity to discover it by the exercise of reasonable diligence, else he will be deemed to have waived it.  (p. 88).

3. SAME—*Validity—Procurement by Fraud—Election—Conclusiveness.*

A contract fraudulently procured is not void, but only voidable, and the party complaining may elect to repudiate it or to be bound by it.  He has but one election, and if he elects to be bound, after knowledge of the fraud, he is thereby concluded.  (p. 88).

4. SAME—*Contract Fraudulently Procured—Election—Proof.*

He may elect by word or act, and acts which disclose an intention to be bound by the contract are sufficient to prove an election.  (p. 88).

5. SAME—*Contract Procured by Fraud—Pleading—Evidence.*

A special replication is not necessary to a special plea of fraud in the procurement, or failure in the consideration of a contract, authorized by Sec. 5, Ch. 126, Code 1913.  A general replication is the only proper reply to such plea, and on the issue thus joined, plaintiff may introduce any evidence that would be admissible under a special replication if one were allowed.  (p. 89).

6. FRAUDS, STATUTE OF—*Oral Option to Cancel Trade—Validity.*

An oral agreement to cancel a trade at the election of one of the parties to it, if he should become dissatisfied at any time, is not an agreement not to be performed in a year, and need not be in writing to be enforceable; and it is error to instruct the jury that, if they believe from the evidence it was not to be performed in a year, it is not binding.  (p. 90).

7. APPEAL AND ERROR—*Discretionary Ruling.*

Wide discretion is given the trial court respecting payment of cost on awarding a new trial, and this court will not interfere with its ruling in that respect unless it clearly appears such discretion has been abused.  (p. 91).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Barbour County.

Action by James M. Coffman against J. A. Viquesney. Verdict for defendant set aside, and he brings error.

*Affirmed.*

*J. Hop Woods* and *J. Blackburn Ware,* for plaintiff in error.

*Harvey W. Harmer* and *Harry H. Byrer,* for defendant in error.

WILLIAMS, JUDGE:

Defendant was awarded this writ of error to an order setting aside the verdict of a jury found in his favor.

This action of debt was brought against him upon a renewal note for $1,000, given originally for ten shares of stock ·in the Belington Brick Company, of the par value of $100. The note of which the one sued on is the last of a series of renewals, was made on the 19th of February, 1906. Defendant pleaded the general issue, and also filed a special plea duly verified, averring fraud in the procurement of the note, failure of consideration, and a guaranty by plaintiff that the stock would pay at least ten per cent. dividend. He also filed sets-off for the interest he had paid on the note at each renewal. Plaintiff replied generally, and on the issues thus joined. the jury found, in favor of defendant, the sum of $353.84. On motion of plaintiff the court set the verdict aside and awarded a new trial. Counsel for defendant insist this was error. The testimony is very conflicting, plaintiff and defendant swearing directly contrary to each other upon the matters averred in the plea, and it is insisted that the finding of the jury was conclusive. It is a rule too well established to require citation of authorities, that where a verdict rests solely upon conflicting testimony of witnesses, the court has no right to disturb it. But if there are facts or circumstances, controlling in their character, admitted to be true, or clearly proven, which are inconsistent with the testimony upon which the jury based their verdict, the court may, and should set it aside, as being contrary to the great weight of the evidence. *Butcher* v. *Sommerville,* 67 W. Va. 261; *Coalmer* v. *Barrett,* 61 W. Va. 237; and *Devericks* v. *Fair Ground Imp. Co.,* 73 W. Va. 174, 80 S. E. 143.

This brick plant was located at Belington where defendant lived, and had commenced to operate only a few months before the sale of stock to defendant. He testified that plaintiff came to him to sell him stock, and assured him that he was an experienced manufacturer of brick; that the company had the best proposition he had ever seen; and told him, if he would buy the stock, he would guarantee it to pay a dividend of ten per cent. He says he relied on those representations

and statements as true and bought ten shares, and executed his note therefor, for $1,000. A stock dividend was declared the first year, but no dividend of any kind was ever declared thereafter. When first incorporated the company consisted of five stockholders, and was capitalized at $15,000. Plaintiff says J. I. Alexander, one of the stockholders, was going to move to Washington, and he bought thirty-five shares from him and paid par value for it. There is no evidence the stock was not supposed to be worth par at the time of the organization of the company. Bad management thereafter appears to have rendered the stock worthless, but just when it became worthless does not appear. Mr. Frank Stout had sold his stock to Mr. J. A. Crislip, another one of the incorporators, and there then remained but three stockholders in the company. It was necessary to have five in order to preserve the corporate existence, and that is the reason assigned by plaintiff for wishing to sell some of the stock to defendant. Defendant admits that he was interested, in a general way, in the development of the town of Belington, and encouraged the establishment of the brick plant at that place. There is some evidence of disagreement among the original incorporators, as to the management, and that Alexander and Stout were bought out by plaintiff and Crislip to get rid of them, but that is not material. The company began operations in December, 1905, and defendant purchased the ten shares in February, 1906. Only one kiln, 150,000 brick, had been burned at that time. Plaintiff was then and continued thereafter to be, a director and the general manager of the company. Immediately after his stock purchase, defendant was elected a director and secretary of the company, and continued as such. It does not appear that there were ever more than five stockholders in the company at any one time. The plant was operated five or six years, before its property was sold and the company went out of business. Defendant says he often complained to plaintiff that the stock was not paying dividends, as he had represented it would, and that plaintiff always offered some excuse and said it would pay out bye and bye. But it does not appear that defendant ever notified plaintiff, until after suit, or at least until after he had placed the note in the hands of his attorney for suit, that he relied

on the alleged fraud, or guaranty, as a defense to the note, although he had renewed it and paid the interest on each renewal numerous times. On receiving a letter from plaintiff's attorney, evidently concerning the note, defendant wrote plaintiff a letter of date March 26, 1912, in which he acknowledged receiving a letter from his attorney, and continuing, says: "I cannot understand why you have taken this course, especially without saying to me that you had to have the money. If you remember when I purchased this stock it was your absolute promise that you would give me all the time that I desired, and while it is true that this has been running for some time, yet it is also true that this stock was absolutely worthless, and I am simply making you a donation of one thousand dollars. It doesn't suit me to pay this at this time, but will pay it sometime in the next two or three months, and I will kindly ask you to withdraw this note and hold it until that time. Of course I cannot prevent you from bringing suit if you so desire, but you will get it quicker the other way and I certainly think that you owe me this much courtesy for donating you the one thousand dollars on the worthless stock." On the following day he wrote plaintiff's attorney, saying he had an understanding with plaintiff, when he purchased the stock, which "turned out to be absolutely worthless," that he would give him all the time he wanted to pay the note, and further said he had written plaintiff and, as soon as he heard from him, he would again write the attorney. And on the 6th of April, 1912, he again wrote the attorney answering another letter from him of the 2nd of April. In this letter he said: "I wrote Mr. Coffman saying that if it was satisfactory I would pay this note between now and the first of May, but have not yet heard from him. I hope you will hold this up as it is not necessary to bring suit to get it."

Those letters, and the repeated renewals of the note, some of them made long after defendant knew, or should have known, if he had been reasonably diligent, of the alleged fraud or failure of consideration, are facts and circumstances wholly inconsistent with his testimony and present contention. They establish a waiver of any such defense as he now sets up in his plea, and prove his election to abide by the

contract. One of the letters contains his express promise to pay the note by a certain time, if suit should be withheld; and suit was not actually brought until after that time had expired. Defendant's opportunity to discover the fraud, if any there was, by reason of his official connection with the company, was ample. His frequent renewing of the note and payment of interest without complaint, and his letters above referred to, are controlling facts and circumstances, which the jury seem to have disregarded. They are of vastly more importance than mere oral testimony, and were sufficient to have turned the scales of justice in plaintiff's favor. They conclusively show a waiver by defendant of any defenses averred in his special plea, even if they had an existence in fact, a question which we can not, and do not, decide. They prove his election, after he had ample opportunity to know of the alleged fraud, to remain bound by his contract, and are sufficient to overcome his oral testimony. A party who seeks to avoid a contract for fraud must act promptly after the discovery thereof. *Williams* v. *Maxwell,* 45 W. Va. 291; *University of Virginia* v. *Snyder,* 100 Va. 567; *Campbell* v. *Building Ass'n.,* 98 Va. 729; and *Hurt* v. *Miller,* 95 Va. 32. A contract procured by fraud is not absolutely void, but voidable at the election of the party defrauded. He may elect to repudiate it or to be bound by it, and if he elects to ratify it, after knowledge of the fraud, he is bound by his election, and can not thereafter repudiate it. He can make but one election, and that he may do by word or act. Acts which disclose an intention to abide by the contract are sufficient to prove an election. Authorities above cited, and *Wilson* v. *Hundley,* 96 Va. 96.

It was not necessary, as counsel contend, that plaintiff should have replied specially to defendant's special plea, before he could be permitted to prove an estoppel or waiver by defendant. The special plea was filed pursuant to Sec. 5, Ch. 126, Code 1913, permitting certain equitable defenses to be set up in defense of an action at law, and Sec. 6, of that chapter, expressly permits a plaintiff, on general replication to such plea, to "give in evidence on such issue, any matter which could be given in evidence, under a special replication if such replication were allowed." It dispenses with the neces-

sity of a special replication to a special plea authorized by section 5, by saying: "Every such issue in fact shall be upon a general replication that the plea is not true." See also *Quaker City Nat'l. Bank* v. *Showaker,* 26 W. Va. 48. The authorities cited and relied on by defendant's counsel do not apply in the case of a special plea authorized by Sec. 5, Ch. 126. Moreover, defendant also pleaded the general issue to the declaration, and on that issue plaintiff had the right to rebut defendant's evidence by proving an estoppel or waiver of defenses.

The verdict was clearly against the overwhelming weight of evidence, and the court properly set it aside. It did not rest along upon conflicting testimony of witnesses. The facts and circumstances, not denied, which we have herein referred to, should have controlled the jury's finding.

Plaintiff's instruction No. 1, was erroneous, and should not have been given. It told the jury they could not find for defendant, on the ground that plaintiff promised to return the note and take back the stock, if they should believe such promise was made, but not in writing, and was not to be performed within a year. Defendant testified that there was an agreement, at the time he bought the stock, to cancel the trade if he became dissatisfied, but it is not pretended that it was in writing, and there is no evidence whatever when it was to be performed. Plaintiff denies that there was any agreement of that kind. If such an agreement was in fact made, the time when it was to be performed was indefinite, according to the only evidence on the question, and depended on the time when defendant should become dissatisfied with his purchase of stock, which might have been within a year. There was nothing in the nature of the agreement which would necessarily extend its performance beyond a year. Therefore, there was no evidence on which to submit the time of performance to the jury. The performance being possible within a year, the agreement, if made, was not unenforceable because not in writing. *McClanahan* v. *Otto-Marmet Coal & Mining Co.,* 74 W. Va. 543, 82 S. E. 752, and *Reckley* v. *Zenn,* 74 W. Va. 43, 81 S. E. 565.

The first part of plaintiff's instruction No. 6 is also erroneous. The stock need not have been entirely worthless at the

time defendant purchased it, to entitle him to set up the defense of fraud.

We have carefully considered all the other instructions given on behalf of plaintiff and we think they were properly given.

It was no abuse of judicial discretion to set aside the verdict and grant a new trial, without requiring plaintiff to pay the costs. Sec. 5, Ch. 138, Code 1913. The trial court has wide discretion in the matter of requiring payment of costs, on granting a new trial, and this court will not interfere with such discretion, unless it appears to have been abused. *Garber* v. *Blatchley,* 51 W. Va. 147. The record discloses no reason why plaintiff ought to have been required to pay the costs. It was no fault of his that he did not get a verdict on the first trial.

The order appealed from is affirmed.

*Affirmed.*