# CHARLESTON.

## REINIGER v. PIERCY.

Submitted September 28, 1915.    Decided November 2, 1915.

1. DEPOSITIONS—*Admission in Evidence—Preliminary Showing—Absence of Deponent.*

   The deposition of a non-resident witness, taken in an action at law, pursuant·to section 34, chapter 130, serial section 4891, Code 1913, and showing on its face the non-residence of the witness, may be read at the trial without showing that the witness is then out of the state.   (p. 64).

2. SAME.

   In such cases the presumption is that the non-residence and absence of the witness from the state continues, satisfying the requirements of section 36 of said chapter, unless the contrary be shown on the trial.   (p. 65).

3. CORPORATIONS—*Subscription to Stock—Action for Price—Fraud—Evidence.*

   On the trial of an action to recover the price of certain mining stock subscribed for by defendant, and defended on the ground of alleged fraud inducing the subscription, the court committed no prejudicial error in rejecting a letter written months before by the seller to an associate on the mining property, inviting him to write him certain boosting letters concerning the property and other mining property and interests in the same locality, to aid him in selling stock, and which letter was unknown to defendant at the time of his subscription, and in no way connected with plaintiff's transaction with him, and which letter could have shed no light on the issues in the case.   (p. 65).

4. TRIAL—*Demurrer to Defendant's Evidence—Right.*

   While the ‚rule is that a demurrer to the evidence should never come from the party on whom the burden of proof lies; nevertheless, when the plaintiff has fully sustained by proof the issues on his part, he may of right demur to defendant's evidence offered in support of affirmative defenses interposed by him.   (p. 67).

5. CONTRACTS—*Rescission for Fraud—Waiver.*

   If a party would rescind his contract for alleged fraud in the procurement of it, he must exercise that right promptly on discovery of the fraud or he will be deemed to have waived it.   (p. 69).

   (WILLIAMS and MASON, JUDGES, absent.)

Error to Circuit Court, McDowell County.

Action by Charles P. Reiniger against M. D. Piercy.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*G. L. Counts* and *Anderson, Strother, Hughes & Curd*, for plaintiff in error.

*Sanders, Crockett & Kee*, for defendant in error.

MILLER, JUDGE:

In assumpsit plaintiff sought to recover of defendant the price of two thousand shares of stock of the Noche Buena Sonora Mining Company, owning mining properties in the State of Sonora, Mexico.  Besides the general issue, defendant by special plea charged that plaintiff in order to effect the alleged sale of said stock had made the following fraudulent and false representations to him: '' (1.)  That the Noche Buena Sonora Mining Company owned valuable mines in the State of Sonora, Mexico, and that said mines had already been developed and were yielding an income which would net a dividend of at least 10% at the time of the sale of this stock; (2) that there was in course of construction at the time of said purported sale a railroad approaching each side of the mines; that said road was completed on one side of the mines to within twenty-five miles of same and on the other side of said mines to within seventy-five miles of same; (3) that the said company was installing a reduction plant and other modern machinery for the purpose of working and developing said mines; (4) that at the time of and prior to said sale various capitalists and business men in the City of Charleston, West Virginia, whom defendant personally knew to be safe, conservative business men, had invested in stocks in said company and made trips to Mexico and examined the mines owned by the Noche Buena Sonora Mining Company, and said Reiniger reported said mines as being in a good state of development and prosperous condition, and that money invested in the mines would be a safe and profitable investment; (5) that before and at the time of said purported sale the stock of the Noche Buena Sonora Mining Company was of great value and that the stock of said company was scarce on the market and difficult to buy, owing to its great value.''

On the first trial the court set aside the verdict for defendant and awarded plaintiff a new trial. On the second trial, plaintiff demurred to the evidence, the jury rendering a special verdict, and on consideration thereof the court found the law thereon in favor of plaintiff, and the judgment complained of was that plaintiff recover of defendant the sum of one thousand one hundred and eighty dollars, with interest from June 10, 1914, and costs.

The first point of error in logical sequence made by defendant is that the court, over defendant's objection, improperly admitted in evidence the depositions of the plaintiff Reiniger, on the ground that, when offered, "it was not sufficiently shown that the witness was without the State of West Virginia." This point is without merit. Not only does the deposition show on its face that plaintiff was a non-resident of the state at the time his deposition was taken, but it was shown by other evidence that he then continued to be a non-resident of the state. On affidavit that a witness resides out of this state, section 34, chapter 130, serial section 4891, Code 1913, authorizes the taking of his deposition to be used in a case pending in any county of this state. And this statute is sufficiently complied with if the deposition shows on its face, as this one does, that the witness at the time his deposition was taken was a non-resident. *Abbott* v. *L'Hommedieu,* 10 W. Va. 677; *Hoopes* v. *Devaughn,* 43 W. Va. 447, 27 S. E. 251. . We understand counsel to argue, however, that although the record shows substantial compliance with said section 34, there is want of proof, as required by section 36 of said chapter, that at the time the deposition was offered the witness was then "out of this State." We do observe that section 36 does not use the words "resides out of this State", employed in section 34. The provision of section 36 is: "A deposition in a case at law taken on such notice under the three preceding sections, may be read in such case, if when it is offered, the witness be dead, or *out of this State,* or one of its judges, or in any public office or service, the duties of which prevent his attending the court, or be unable to attend it from sickness or other infirmity, or be out of the county in which the case is pending. But when the only ground of reading a deposition is that the witness is out of the county,

on motion to the court, before the commencement of the trial it may, for good cause shown, require such witness to attend in person.'' It is contended that, although a deposition may have been properly taken under section 34, because of the non-residence of the witness, it cannot, under section 36, be read on the trial without showing affirmatively that he is then physically out of the state and the county where the trial is had. Such a construction of said section 36, we think, would be unreasonable and out of harmony with section 34. We think as section 34 authorizes the taking of a deposition of a witness resident out of the state at the time it was taken, section 36 must be construed as authorizing the use of that deposition, when the witness at the time it is offered continues to reside out of the state. Any other construction would often work a hardship on litigants.

It is further contended in argument that the evidence of non-residence, shown on the deposition itself, is not sufficient evidence of the continued non-residence of the witness at the time of the trial, and that oral evidence offered is not sufficient to show such continued non-residence. Without such oral evidence we think no error would have been committed in admitting the deposition, for the presumption was that the non-residence of the witness continued until the contrary was shown. 16 Cyc. 1053, 1054, and cases cited in note 31; Lawson on Law of Presumptive Evidence, 219, 220; 1 Elliott on Evidence, section 109; *Moore* v. *Ohio Valley Gas Co.,* 63 W. Va. 455.

The next point is that the court erroneously rejected certain material evidence offered by the defendant. We have examined the record on this question, and upon well recognized principles we see no error in the rulings of the court thereon. The only evidence of the defendant rejected which we need notice was a letter bearing date May 14, 1909, purporting to have been written by the plaintiff to Thomas Bentley. This letter bears date some seven months before the date of the contract sued on. It does not appear just when defendant obtained this letter, but it does appear that he obtained it sometime before the trial from a lawyer in Charleston, West Virginia. It is not pretended, nor is it proven, that defendant was influenced one way or the other by this letter in making

his contract with plaintiff. It appears from the contents of this letter that Bentley was an associate of Reiniger in promoting certain mining interests in Mexico, including the so called Noche Buena mine, and was then on the ground attending to that business. It purports to give direction to Bentley how to acquire title to some of the properties in the name of Reiniger; it tells him how plaintiff is progressing in selling stock in Noche Buena, and how he is in honor bound to other associates to give his attention to that property before taking up any other business actively; tells Bentley how his former letters have aided him in selling stock, and invites him to continue writing him twice to three times a week telling him all the good news he could about Noche Buena, of the work he was doing at the mine, of the rich ore he was taking out, of the possibilities of the mine, when the shaft should have been driven to the depth of from two to five thousand feet; also to tell him of the rich finds made along the river on which the Noche Buena mine was located, how the mines had been working day and night on the placer, and how one took out five hundred dollars a day in gold, and that many others could do the same. He was also requested to state in his letters, among others things, how the Yaqui River was full of gold dust, and of the big mines and immense deposits of gold further up the river that make these deposits possible, also to tell him of the early traditions of the country, how many fortunes had been made around Noche Buena, of Noche Buena's present condition, how the railroad was being pushed along, of the capital that was rushing in there for off land, of the big strikes that had been made by companies like theirs. Bentley was also asked to inform Reiniger when he would start the erection of the smelters, etc.

We do not see how this letter could have shed any light upon the issues in the case. The only purpose defendant could have had in offering this letter was to disclose some fraudulent scheme on the part of Reiniger, respecting the Noche Buena mine, of which the defendant had become a victim. We do not think the letter shows a fraudulent scheme. It does not disclose any purpose on the part of Reiniger to obtain from Bentley any false statements respecting the subjects mentioned. Nor is it claimed or pretended that any

letters were received from Bentley by plaintiff which were shown to defendant to induce the contract sued on, nor is there any evidence to show that the facts solicited by this letter were false or untrue. It is not pretended that defendant ever saw any other letter from Bentley to Reiniger before or after his contract. The most that can be said against this letter is that it may have invited from Bentley too rosy an account of the conditions of the mines and mining interests in the vicinity of the Noche Buena mine, but the defendant was in no way influenced thereby, so far as the record shows, and we do not see how he was prejudiced by the rejection of this letter.

Next it is complained that the court erroneously entertained and required defendant to join in plaintiff's demurrer to the evidence. It is argued that as the burden was upon plaintiff to maintain the affirmative of the issue, he could not assume that he had made out his case by demurring to the evidence and thereby to withdraw the case from the consideration of the jury. The rule undoubtedly is that a demurrer to the evidence should never come from the party on whom the burden of the proof lies. 1 Robinson's Practice, (Old edition), 351; *Bennett* v. *Perkins,* 47 W. Va. 425; 6 Ency. Pl. & Prac. 440; *Bowman* v. *Dewing & Sons,* 50 W. Va. 445; 38 Cyc. 1541. But the rule is that either party may demur to the evidence introduced by his adversary in support of the affirmative of any issue the burden of which is upon him. Such is the rule propounded by the authorities just cited. In the case at bar plaintiff fully proved the contract between himself and the defendant, which was in writing and signed by him, as follows: "APPLICATION FOR STOCK. Dec. 21, 1909. I have this day applied to Charles P. Reiniger for 2000 Shares of Stock of The Noche Buena Sonora Mining Company at .50 per share. Par Value $1.00. Fully paid and non-assessable. I hereby promise to pay the amount above set upon delivery of the Certificate of Stock this day purchased in Bankable notes. Name, M. D. Piercy, City, Northfork, State, West Virginia." He furthermore proved delivery to the defendant of the stock certificate called for, non-payment of the price stipulated, and thereby fully sustained the burden of the issues upon his part.

The burden of proving the defenses pleaded in defendant's special plea was of course upon him, and to the evidence offered in support thereof the authorities gave plaintiff the right to demur. The only real controversy before the court and jury on the trial of the action was over these several grounds of defense. We have carefully examined all the evidence adduced by both sides relating to these defenses, and without going into details we may say generally, that the record is barren of any evidence tending in any appreciable degree to support them. The plea avers in effect that the alleged representations set forth therein were made to defendant by plaintiff to secure his application for the stock, but he offered not a syllable of proof of any such representations made to him prior to the date of his contract. When on the witness stand and pressed by counsel to detail the representations made by the plaintiff to him to induce his subscription to the stock, his only answer was, "I don't remember the conversation. He was boosting the stock and showing me some samples, and so on." "I was there an hour and a half or two hours. I don't remember the conversation, at all." Defendant mainly relied upon certain letters written to him by plaintiff subsequently to his subscription, during the years 1909, 1910, and 1911. This correspondence shows that after defendant received the certificate of stock from Reiniger, he returned it to Reiniger in a letter, saying that he inferred from a prior letter from Reiniger that he would not send the stock certificate until he had received defendant's note, that he was financially hard up and that plaintiff would have to hold the stock until he could take care of it. On receiving it plaintiff immediately returned this stock certificate to defendant, giving him some information he had received in regard to the mine, and, among other things, saying: "I have issued you this stock, and having confidence in you that I do, am returning same to you. Please understand I do not want to push it on you. I believe you want it, and more and for this reason am pursuing this course. If you want time on it, same will meet my approval. You can give me a 60 day or even 90 day note for same, or if you can secure the cash by March 1, 1910 you can hold it until that time and pay me for same." The oral and documentary evidence shows that after receiving

this letter defendant retained the stock, and though many frequent demands were made upon him by letter and in person for payment or return of the certificate, he failed, neglected and refused to either pay for the stock or to surrender the certificate, until after the first trial of this action. Once or twice he promised to return the certificate, when plaintiff swears he could have otherwise disposed of it, but neglected to do so. Plaintiff appears to have acted absolutely fair with defendant in relation to this stock. He gave him several opportunities to relieve himself from payment by surrendering the certificate, but he failed to take advantage thereof, which finally drove him to this action for relief.

Moreover, while the letters written by plaintiff to defendant subsequently to the latter's subscription to the stock contain rosy views of the mining property in Mexico, and notably of the Noche Buena mine, and with the purpose of inducing a larger subscription to the stock, there is not a particle of evidence tending in an appreciable degree to show that any of these representations were in fact false; but if they were false they could not have served to influence defendant's original subscription. The evidence of defendant shows that after receiving this certificate of stock the last time he held on to it tenaciously, and by his letters led plaintiff to believe he would finally pay for the stock, so that in the event he should conclude to go to Mexico to locate and take part in the development of these mining properties he might then keep and pay for it and thereby obtain the influence of the plaintiff in securing him a position. The rule of law is that if a party would rescind his contract on the ground of fraud he must exercise that right promptly on discovery of the fraud, else he will be deemed to have waived it. *Williams* v. *Maxwell*, 45 W. Va. 306; *Watkins* v. *West Wytheville Land etc. Co.*, 92 Va. 1; *West End Real Estate Co.* v. *Claiborne*, 97 Va. 734; *Rouzie* v. *Daingerfield*, 97 Va. 708; *Campbell* v. *Eastern Building & Loan Association*, 98 Va. 729.

Finding no error therein we are of opinion to affirm the judgment.

*Affirmed.*