# CHARLESTON.

MATNEY et al v. BLAKELY et al.

Submitted September 30, 1924.   Decided October 7, 1924.

1.   APPEAL AND ERROR—CONTRACTS—*Proof of Fraud and Deceit Must Be Clear to Justify Rescission, Unless Proof of Fraud and Deceit Clear, Rescission Denied, Though Defendant Dealt Unfairly; Decree Based on Conflicting Depositions to Establish Fraud not Reversed Though Different Decree Might Have Been Rendered by Appellate Court.*

  To justify a decree for rescission of a contract for fraud and deceit, the proof of fraud and deceit must be clear, whether by direct or circumstantial evidence, and unless it is so, relief will be denied, even though it may appear that defendant has not been altogether fair in his dealings.   And if the decree is based on depositions to establish the fraud which are so conflicting and unsatisfactory that different judges might reach different conclusions therefrom this court will not reverse, even though it might have rendered a different decree had it decided the cause  in the first instance. (p. 294).
  (Appeal and Error, 4 C. J. § 2870; Cancellation of Instruments, 9 C. J. § 195.)

2.   FRAUDS, STATUTE OF—*Statute Must be Pleaded; Otherwise is Considered as Waived.*

  A party who relies upon the statute of frauds to avoid his contract must in some manner by his pleadings bring it to the attention of the trial court, otherwise it will be considered as waived. (p. 294).
  (Frauds, Statute of, 27 C. J. § 446.)

3.   CONTRACTS—*Party Seeking Rescission for Fraud Must Act Promptly.*

  After a party has full knowledge that he has been induced to make a contract by fraudulent representations, he must then act if he desires rescission on that ground; he cannot remain passive, or continue to perform the contract, prepared to confirm or repudiate it according to what may turn out to be to his advantage.   (p. 296).
  (Cancellation of Instruments, 9 C. J. § 81.)

4.   SAME—*Generally Rescission Not Granted for Partial Failure of Consideration, Especially Where no Offer to Restore Status Quo.*

  Generally rescission and cancellation of a contract will not be given because of a partial failure of consideration, especially

where there is no offer to restore the status quo as far as possible, (p. 296).

(Cancellation of Instruments, 9 C. J. § 35 [1926 Anno].)

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, McDowell County.

Suit by C. M. Matney and others against J. W. Blakely and others. From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*John Kee,* for appellants.
*Strother, Sale, Curd & Tucker,* for appellees.

LIVELY, JUDGE:

The bill seeks rescission and cancellation of a verbal contract of sale of an interest in a coal mine, including tipple, coal mine cars, steel rails, and a White truck, made between plaintiffs and defendants Blakely and Schuneman, on the ground of fraud and deceit, and failure of consideration; and, as incidental to the main purpose, to enjoin enforcement of a deed of trust given to secure a purchase money note, and to cancel both note and trust deed; repayment of purchase money and money expended because of the contract; and damages for loss of profits and rewards, because of failure of the contract.

The answer denies the material averments of the bill. There are no other pleadings.

Defendants, J. W. Blakely and A. H. Schuneman, had an oral agreement with Polan, the owner of a small tract of coal land, by which the former had erected a tipple on the land of the latter for the purpose of mining the coal and had opened the small seam, purchased two mine cars, steel rails, a "White ton truck" for hauling the coal to consumers, and had begun mining. They were to pay twenty-five cents on each ton as royalty, and had the privilege of carrying on the operation until such time as Polan should need the land on which the tipple was erected, for his own purposes. They were to keep the land around the tipple free from slate, bone and rubbish. A short time after they began operating, it was discovered that the mine opening was not on Polan's land, but was on the land of the Central Pocahontas Coal Company.

Permission to take coal from its land without payment of royalty was then given defendants by the general manager of the Coal Company, and the operation continued.

Plaintiff, Monroe Matney, who had experience in coal mining, either approached Blakely or was approached by Blakely (the evidence on that point being conflicting), and the verbal sale and purchase which is the basis of this suit was entered into by them. Matney says Blakely told him he had fifteen acres of coal on the Polan and Johnson land and that he (Matney), would have all the time necessary to mine the coal; that he owned the truck, tipple, coal mine, mine cars and steel rails; and relying on these representations he orally purchased this property for $6,500.00 in the name of his father, C. M. Matney (not desiring to take it in his own name by reason of some undetermined partnership liabilities), and executed a note therefor dated September 12, 1921, signed by C. M. Matney, his father, and by Lizzie Matney, his wife, and secured by a deed of trust on a house in Welch to which she had the legal title. He is corroborated by his wife, who says she inquired of Blakely the details of the transaction when she went to his office to sign the note and deed of trust; and he is partly corroborated by C. M. Matney in whose name the transaction was conducted. On the other hand, Blakely says he told Monroe Matney fully the interest he and Schuneman had in the mine and the other property and the agreement he had with Polan, above set out, by which the coal was to be mined. He is corroborated by Schuneman who says he was present in the office when the trade was made, within a few feet of Matney and Blakely, but probably did not hear all of the conversation. He says he heard Blakely tell Matney in detail the character of the interest they had in the mine. The trust deed executed contemporaneously with the contract, is on the Lizzie Matney house and lot; and on the White truck and on "All of the right, title and interest of C. M. Matney in a certain coal mine located on the property of Johnson and Sperry and Polan about a quarter of a mile below the Welch hospital, including the tipple, mine cars, rails and other mining equipment." This description militates against Matney's contention that he bought the coal in

fifteen acres of land. Subsequently to taking charge of the mine Polan required Matney to pay a royalty at the rate of twenty-five cents per ton on the coal passing through the tipple, and Matney says he paid to him in all the sum of $100.00 as royalty. This incident would indicate that Matney did not understand that he had purchased the coal in fifteen acres. He would not likely pay royalty for mining his own coal. It is true that this incident occurred after the trade was made, but it seems that Matney did not then complain, but continued to mine the coal for about one year, and until Polan went on the property and "cut the tipple down." Matney is uncertain and indefinite as to the amount of coal he mined, saying he had taken out not less than one thousand tons, but could not say if he had mined as much as two thousand tons. The coal was sold and delivered for domestic consumption, and it does not appear that Matney kept books showing his business dealings. He was illiterate. Counsel for Matney argue that the preponderance of evidence establishes the charges of fraudulent and deceitful misrepresentations on the part of Blakely and that Matney believed them and acted on them in good faith. The trial court has found that these charges have not been substantiated, and dismissed the bill. The general rule is that this court will not reverse a decree rendered on conflicting depositions of such doubtful and unsatisfactory character that different judges might reach different conclusions, although the appellate court might have rendered a different decree if it had acted in the first instance. *Smith* v. *Yoke*, 27 W. Va. 639; *Ross* v. *McConnaughy*, 85 W. Va. 199; *Baughman* v. *Hoffman*, 90 W. Va. 388. The numerical number of witnesses does not necessarily constitute a preponderance of evidence. We have closely inspected the evidence relative to the charges of false and fraudulent representation on the part of Blakely, and in the light of circumstances, subsequent events, and acts of the parties, we are not justified in reversing the decree on that ground.

It is argued that the contract being verbal, and for the sale of an interest in real estate, and not to be performed within one year, is unenforceable as coming within the provisions of the Statute of Frauds; and counsel on each side

have devoted much space in the briefs to consideration of that point. The Statute of Frauds must be pleaded in some way before it can be considered. Neither the bill nor answer, or other pleading, set up the Statute for relief in any way. That there was a contract. is admitted by each party, and plaintiffs seek to cancel it solely on the grounds of fraud and deceit, and for failure of consideration. The answer denies the charges of fraud and deceit, and denies a failure of consideration. If a party, admitting a contract, fails to set up specially the Statute of Frauds in order to avoid it, he cannot have the benefit of the Statute. 27 C. J. page 371, Sec. 448; *Barrett* v. *McAllister*, 33 W. Va. 739; *Campbell* v. *O'Neill*, 69 W. Va. 459; *Moore, Keppel & Co.* v. *Ward*, 71 W. Va. 393.

Even though the lower court may have found fraud in the formation of the contract there is another ground which would justify refusal of relief, although not stressed in the briefs. In order to entitle a party to rescission of a contract on the ground of fraud and misrepresentation he must act promptly. and demand rescission upon discovery of the fraud, or give some good excuse for unreasonable delay. He cannot hold onto the contract and act under it after discovery of fraud, and then when he finds it is not fruitful, demand rescission. *Deegans Coal Company* v. *Hedrick*, 91 W. Va. 377. Shortly after Matney had begun to take out coal Polan demanded from him and received royalties. Matney claimed that Blakely had represented to him that he owned the coal, fifteen acres, and nothing was said about payment of royalty. He claims the coal was sold to him outright. That misrepresentation was then discovered. It was enough to put Matney on inquiry as to what right Polan had in the property. He discovered that the coal opening and the coal he was taking out belonged to the Coal Company which told him to go ahead. He continued operating the mine under the contract for many months with this knowledge, using the personal property, and realizing therefrom a profit of $3.00 or $3.75 for each ton. He said the coal sold at $5.00 per ton and it cost him $1.25 to mine it. It seems that he did not complain of fraud, or demand rescission until after defendants pro ceeded to collect the balance on the purchase money note.

All this time he was making payments on the note out of the profits on the coal and had paid about $1,500.00 at the time Polan cut the tipple down. Polan says he had notified Matney not to throw bone and slate on the lot around the tipple or he would stop the mining, and because Matney disregarded this notice and continued to litter up the premises he cut the tipple down. When did Matney discover that Blakely had fraudulently sold him fifteen acres of coal with full "right to take every lump of it out of the ground?" When a person has discovered fraud, he will not be permitted to remain passive, prepared to confirm or repudiate a contract according to what may turn out to be to his advantage. *Carter* v. *McArtor,* 28 Grat. 356; *Western Mining &c.* v. *Peytona Coal Co.,* 8 W. Va. 406. "The rule is that where a party has a right to rescind a contract on the ground of fraud, he must rescind at once upon discovery of the fraud, or as soon thereafter as circumstances will permit; for he is not bound to rescind, and any unreasonable delay, especially if it is injurious to the other party, will be regarded as a waiver of his right. This is well settled." *Barnett* v. *Barnett,* 83 Va. 504. See *Edgell* v. *Smith,* 50 W. Va. 349; *Lafferty* v. *Lafferty,* 42 W. Va. 783; *Thompson* v. *Whitaker,* 41 W. Va. 574. In this connection it may be observed that rescission of an executory contract will rarely be granted where it is impossible to put the parties in statu quo. How can the coal be restored to the mine? The tipple has been destroyed because of plaintiffs' act in putting bone and slate on the Polan lot; the truck has decreased in value. There has been no offer to return the personalty; and plaintiffs are still holding onto it. *Holderby* v. *Taylor Company,* 87 W. Va. 166. It is true that one cannot waive, or acquiesce in a fraudulent transaction while ignorant of its commission. He must have knowledge, and mere suspicion will not do. But he cannot close his eyes to what he might readily know and ought to have known. Acquiescence and waiver are questions of fact. *Pence* v. *Langdon,* 99 U. S. 578; *Foster* v. *Railroad,* 146 U. S. 99. Possibly the fact that the status quo cannot be fully restored would not of itself defeat rescission. *Jervis* v. *Berridge,* 8 Ch. App. (Eng.) 351.

The remaining assignment of error is that there was a total

failure of consideration which demands rescission and cancellation. It is clear that there was not a total failure of consideration in any view of the case. Even if it was admitted that fifteen acres of coal in fee was purchased and the title failed there remained a partial consideration for the note given. The truck cost $3,500.00 and was in good condition. After use by Matney for over a year he says it is worth $1,500.00; the tipple cost $800.00 and was of some value; it does not appear what the steel rails and mine cars cost, but they then had and now have value. These values passed to Matney as part consideration for his $6,500.00 note on which he has paid about $1,600.00, besides the value of the coal which he took out by virtue of the contract. The contract was valuable to him, and was lost because he failed to heed Polan's warning to remove from the premises the bone and slate he had placed there, or he would be stopped from using the tipple and land. It may be that the consideration for the note was inadequate. On this we express no opinion, but mere inadequacy of consideration does not suffice to vitiate a contract. It is a circumstance bearing on the question of fraud. Beach on Modern Contracts, Section 5. If the inadequacy of consideration be so gross as to shock the conscience, it may amount to proof of fraud. Where the inadequacy does not amount to proof of fraud, it may nevertheless be considered with other evidence and circumstances in determining if the contract was in fact tainted with fraud. *Deepwater* v. *Renick*, 59 W. Va. 343. What we have here is a demand for rescission based on total failure of consideration. A rescission for partial failure of consideration may be had in equity, but the party asking it must offer to return the value he has received and place the other party in statu quo, so far as he is able under the circumstances. He may affirm the contract and sue for abatement on the purchase price, as is often done where land is sold by the acre and there is an actual shortage of the acreage. The proof is far short of showing a total failure of consideration, and the decree cannot be reversed on that ground.

We affirm the decree.

*Affirmed.*