**Willie WILSON, t/a Willie Wilson TV Appliances, Appellant,**

v.

**Nick SCAMPOLI, Appellee.**

**No. 4015.**

District of Columbia Court of Appeals.

Argued Jan. 23, 1967.

Decided May 2, 1967.

Blaine P. Friedlander, Washington, D. C., with whom Mark P. Friedlander, Mark P. Friedlander, Jr., Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for appellant.

William Reback, Washington, D. C., for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN (Associate Judge, Retired).

MYERS, Associate Judge.

This is an appeal from an order of the trial court granting rescission of a sales contract for a color television set and directing the return of the purchase price plus interest and costs.

Appellee purchased the set in question on November 4, 1965, paying the total purchase price in cash. The transaction was evidenced by a sales ticket showing the price paid and guaranteeing ninety days' free service and replacement of any defective tube and parts for a period of one year. Two days after purchase the set was delivered and uncrated, the antennae adjusted and the set plugged into an electrical outlet to "cook out."[1] When the set was

---

1. Such a "cook out," usually over several days, allows the set to magnetize itself and to heat up the circuit in order to indicate faulty wiring.

turned on, however, it did not function properly, the picture having a reddish tinge. Appellant's delivery man advised the buyer's daughter, Mrs. Kolley, that it was not his duty to tune in or adjust the color but that a service representative would shortly call at her house for that purpose. After the departure of the delivery men, Mrs. Kolley unplugged the set and did not use it.[2]

On November 8, 1965, a service representative arrived, and after spending an hour in an effort to eliminate the red cast from the picture advised Mrs. Kolley that he would have to remove the chassis from the cabinet and take it to the shop as he could not determine the cause of the difficulty from his examination at the house. He also made a written memorandum of his service call, noting that the television "Needs Shop Work (Red Screen)." Mrs. Kolley refused to allow the chassis to be removed, asserting she did not want a "repaired" set but another "brand new" set. Later she demanded the return of the purchase price, although retaining the set. Appellant refused to refund the purchase price, but renewed his offer to adjust, repair, or, if the set could not be made to function properly, to replace it. Ultimately, appellee instituted this suit against appellant seeking a refund of the purchase price. After a trial, the court ruled that "under the facts and circumstances the complaint is justified. Under the equity powers of the Court I will order the parties put back in their original status, let the $675 be returned, and the set returned to the defendant."

Appellant does not contest the jurisdiction of the trial court to order rescission in a proper case, but contends the trial judge erred in holding that rescission here was appropriate. He argues that he was always willing to comply with the terms of the sale either by correcting the malfunction by minor repairs or, in the event the set could not be made thereby properly operative, by replacement; that as he was denied the opportunity to try to correct the difficulty, he did not breach the contract of sale or any warranty thereunder, expressed or implied.[3]

D.C.Code § 28:2–508 (Supp.V, 1966) provides:

(1) Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

A retail dealer would certainly expect and have reasonable grounds to believe that merchandise like color television sets, new and delivered as crated at the factory, would be acceptable as delivered and that, if defective in some way, he would have the right to substitute a conforming tender. The question then resolves itself to whether the dealer may conform his tender by adjustment or minor repair or whether he must conform by substituting brand new merchandise. The problem seems to be one

---

2. Appellee, who made his home with Mrs. Kolley, had been hospitalized shortly before delivery of the set. The remaining negotiations were carried on by Mrs. Kolley, acting on behalf of her father.

3. Appellee maintains that the delivery of a color television set with a malfunctioning color control is a breach of both an implied warranty of merchantability (D.C. Code § 28:2–314 (Supp. V, 1966)) and of an implied warranty of fitness for a particular purpose (D.C. Code § 28:2–315 (Supp. V, 1966)) and as such is a basis for the right to rescission of the sale. We find it unnecessary to determine whether a set sold under the circumstances of this case gives rise to an implied warranty of fitness for a particular purpose or whether, as appellant contends, the remedial provisions of the express warranties bind the buyer to accept these same remedial provisions as sole remedies under an implied warranty.

of first impression in other jurisdictions adopting the Uniform Commercial Code as well as in the District of Columbia.

Although the Official Code Comments do not reach this precise issue, there are cases and comments under other provisions of the Code which indicate that under certain circumstances repairs and adjustments are contemplated as remedies under implied warranties. In L & N Sales Co. v. Little Brown Jug, Inc., 12 Pa.Dist. & Co.R.2d 469 (Phila.County Ct.1957), where the language of a disclaimer was found insufficient to defeat warranties under §§ 2–314 and 2–315, the court noted that the buyer had notified the seller of defects in the merchandise, and as the seller was unable to remedy them and later refused to accept return of the articles, it was held to be a breach of warranty. In Hall v. Everett Motors, Inc., 340 Mass. 430, 165 N.E.2d 107 (1960), decided shortly before the effective date of the Code in Massachusetts, the court reluctantly found that a disclaimer of warranties was sufficient to insulate the seller. Several references were made in the ruling to the seller's unsuccessful attempts at repairs, the court indicating the result would have been different under the Code.

While these cases provide no mandate to require the buyer to accept patchwork goods or substantially repaired articles in lieu of flawless merchandise, they do indicate that minor repairs or reasonable adjustments are frequently the means by which an imperfect tender may be cured. In discussing the analogous question of defective title, it has been stated that:

The seller, then, should be able to cure [the defect] under subsection 2–508(2) in those cases in which he can do so without subjecting the buyer to any great inconvenience, risk or loss. Hawkland, Curing an Improper Tender of Title to Chattels: Past, Present and Commercial Code, 46 Minn.L.Rev. 697, 724 (1962). See also Willier & Hart, Forms and Procedures under the UCC, ¶ 24.07 [4]; D.C.Code § 28:2–608(1) (a) (Supp. V, 1966).

Removal of a television chassis for a short period of time in order to determine the cause of color malfunction and ascertain the extent of adjustment or correction needed to effect full operational efficiency presents no great inconvenience to the buyer. In the instant case, appellant's expert witness testified that this was not infrequently necessary with new televisions. Should the set be defective in workmanship or parts, the loss would be upon the manufacturer who warranted it free from mechanical defect. Here the adamant refusal of Mrs. Kolley, acting on behalf of appellee, to allow inspection essential to the determination of the cause of the excessive red tinge to the picture defeated any effort by the seller to provide timely repair or even replacement of the set if the difficulty could not be corrected. The cause of the defect might have been minor and easily adjusted or it may have been substantial and required replacement by another new set—but the seller was never given an adequate opportunity to make a determination.

We do not hold that appellant has no liability to appellee,[4] but as he was denied access and a reasonable opportunity to repair, appellee has not shown a breach of warranty entitling him either to a brand new set or to rescission. We therefore reverse the judgment of the trial court granting rescission and directing the return of the purchase price of the set.

Reversed.

4. Appellant on appeal has renewed his willingness to remedy any defect in the tender, and thus there is no problem of expiration of his warranties. He should be afforded the right to inspect and correct any malfunction. If appellee refuses to allow appellant an opportunity to do so, then no cause of action can lie for breach of warranty, express or implied, and the loss must be borne by appellee.