CLARENCE R. REECE

*v.*

YEAGER FORD SALES, INC., *a corporation*
*and*
FORD MOTOR COMPANY, *a corporation*

(No. 12950)

Submitted September 28, 1971. Decided November 23, 1971.

454

*Grover C. Goode,* for Yeager Ford Sales, Inc.

*Camper & Watson, Wade T. Watson,* for appellee.

BERRY, JUDGE:

This is an appeal by the Yeager Ford Sales, Inc. from a judgment of the Circuit Court of McDowell County which awarded $4,155 to the appellee, Clarence R. Reece, in an action by him to rescind a contract with Yeager for the sale of a 1968 LTD Ford Sedan and to recover the purchase price of the automobile. The appellee instituted this action on February 11, 1969, based on the grounds of breach of an express warranty and fraud on the part of Yeager and the Ford Motor Company, a co-defendant who filed a separate appeal with this Court. Yeager timely filed a motion to set aside the jury verdict and to enter judgment for it or to grant it a new trial, which motion was overruled and on March 30, 1970, this Court granted Yeager an appeal and supersedeas. The case was submitted for decision on arguments and briefs of the parties on September 28, 1971.

On July 5, 1968, the appellee, Clarence R. Reece, purchased a 1968 LTD Ford Sedan from Yeager Ford Sales, Inc. in Welch, West Virginia, for $4,155. Reece was allowed $1600 for the trade-in of his 1965 Mercury automobile and he arranged the financing of the car through the Bank of War which received the title to the automobile.

Reece had seen the car on the lot on July 3rd or 4th, 1968, and decided to buy it. The car had recently arrived at the dealer's place of business in Welch and still had road grime on it and was covered by plastic when Reece

and his wife first saw it. The Reeces did not notice any defects in the car at the time of purchase. Mr. Reece told the salesman that he needed the car immediately because he was leaving the next day for Chicago. The car was washed and the Reeces took delivery of the car on the evening of July 5, 1968.

The Reeces left early the next morning for Chicago and did not notice any defects in the car until they arrived there. Mr. Reece stated that he noticed that the chrome moulding or trim around the rear window did not fit correctly. The Reeces returned home from Chicago on July 16, 1968, after driving the car some 1600 miles and then noticed some white specks of paint on the car which was painted black. Mr. Reece also testified that he detected a sharp edge on the side of the right door which extended to the right fender, and some "rolls" in the top of the car. He stated a panel on the dashboard had come off and that the catch on the passenger's side of the front seat had broken. No complaint was ever made about the motor or mechanical parts of the car.

On July 22 or 23, 1968, Mr. Reece returned the car to Yeager for repairs. He picked the car up the following evening and made no complaint or comment to anyone concerning the repairs to the car at that time. After the car was taken to Yeager and repairs had been made the car was driven to Tennessee on two occasions and it was also driven around McDowell County during which time it was driven about 1800 additional miles.

Mr. Reece claimed that the repairs were not properly made, and his wife telephoned an adjuster for the Ford Motor Company, Mr. Fenstermaker, who inspected the car at the Yeager lot on August 14, 1968. Mr. Fenstermaker told Mrs. Reece on August 14th that he would report her complaints to the Cincinnati office and a Ford representative would contact her. The Reeces claim they were never contacted until they called the Ford plant in Wayne, Michigan, on September 9, 1968, and arranged for an adjuster to come down and inspect the car. The

adjuster, Lennie Myers, inspected the car at Reece's home at Coalwood, West Virginia, on September 18, 1968. Myers wrote down a list of complaints that Mrs. Reece pointed out to him and he stated that Ford Motor Company would pay for all of the repairs to the car free of charge to the Reeces. Mrs. Reece replied that she didn't know whether her husband would accept the offer to repair or not and stated that she thought her husband wanted a new car.

The defects were all of a minor nature common to new cars and witnesses for both parties stated it would only cost from $35 to $80 to repair them.

Mr. Reece had taken the car to the Elkhorn Ford Sales in Keystone and pointed out seven defects which the service manager, John Lawless, who testified in the case, said would cost about $77 to repair. The nine defects pointed out by Mrs. Reece to Lennie Myers was estimated to cost $80 to repair. J. R. Hall and Marshall Coleman, who inspected the car, stated it would cost about $35 or $40, while Otis Poole estimated it would cost about $60 to repair the defects.

On September 19, 1968, Mr. Reece consulted an attorney who advised him to have the defects of the car listed by another Ford dealer and then to leave his car at Yeager Ford Sales and demand that Yeager return his purchase money. Reece followed his attorney's advice and after having the car inspected at the Elkhorn Motors, as indicated above, he drove the car to Yeager's lot, left it and asked an employee of Yeager to refund to him the purchase price of the automobile, which the employee refused to do. Reece, on the same day, signed a letter written by his attorney to Yeager Ford Sales, Inc., the Ford Motor Company and the Bank of War, advising them of his intent to rescind the contract. Mr. Reece had kept the car two and one-half months and had driven it approximately 3400 miles before leaving it on Yeager's lot.

The warranty given to Reece when he purchased the automobile from Yeager warranted to him that each part of a new and unused 1968 Ford automobile was free under

normal use and service from defects in factory material and workmanship for a period of 24 months from the date of the purchase or until it had been driven for 24,000 miles, and that all warranties were to be fulfilled by the selling dealer or any authorized Ford dealer at his place of business by replacing with a genuine new Ford part, or Ford Authorized Remanufactured part, or *repairing any such defective part free of charge,* including related labor for the original purchaser; that none of the warranties shall apply to any part of a vehicle which has been subject to misuse, negligence, alteration or accident, or which shall have been repaired outside of an authorized Ford dealer, or any abnormal application of stress to the vehicle.

The warranty also states: "The warranties herein are expressly IN LIEU OF any other express or implied warranty, condition or guarantee on the vehicle or any part thereof, including any implied WARRANTY of MERCHANTABILITY or FITNESS and of any other obligation on the part of the Ford Motor Company or the Selling Dealer."

Mr. Reece instituted this action seeking rescission of the contract of purchase on the grounds of breach of warranty and fraud on the part of Yeager and Ford Motor Company. The jury awarded a verdict of $4,155 for the plaintiff upon which the trial court rendered judgment.

Several assignments of error are made on this appeal by Yeager Motor Sales, all of which amount to the contention that rescission is not proper under the facts and circumstances in the case at bar.

It is the contention of the appellee that the 1968 LTD Ford sedan which he purchased from the appellant, Yeager Ford Sales, was not free from defects, and therefore the warranty was breached; that Yeager is guilty of fraud for not advising him of the defects and that he has the right under the law to rescind the contract for the sale of the automobile. However, the general provisions under the warranty provide for the warranties to be fulfilled by

the selling dealer, Yeager, by repairing any such defects free of charge and the warranties referred to are: " * * * expressly IN LIEU OF any other express or implied warranty, condition or guarantee on the vehicle or any part thereof, including any implied WARRANTY of MERCHANTABILITY or FITNESS and of any other obligation on the part of the Ford Motor Company or the Selling Dealer." The provisions of such a warranty have been upheld and approved, both before and after the adoption of the Uniform Commercial Code. *Payne* v. *Valley Motor Sales, Incorporated,* 146 W.Va. 1063, 124 S.E.2d 622; *Southwest Forest Indus., Inc.* v. *Westinghouse Elec. Corp.,* 422 F.2d 1013. Such warranties, if all other warranties are expressly excluded, are approved under the provisions of the Uniform Commercial Code adopted in this State in 1963, Code, 46-2-719 (1) (a), as amended, subject to the provisions of subsections 2 and 3. Subsection 2 provides that where the circumstances cause an exclusive or limited remedy to fail of its essential purpose, the remedies provided by the Code will not be limited to the terms of the agreement. Subsection 3 provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Under the facts and circumstances of the instant case the limitations with regard to the remedy have neither failed of their essential purpose nor are they unconscionable. This is true because the defects relied on by the appellee are minor defects which are found in the manufacture of new automobiles and can be readily repaired or corrected, such as alignment of the rear bumper, removing grinder marks from the rear window moulding, removing the ripples on the right side of the roof extension panel, dings or slight defects in the sheet metal on the fenders, correcting of the dirt in the paint on tail light extension and tightening the left front pillar post panel. These were about all of the defects listed by Mrs. Reece to the adjuster, or representative of the Ford Motor Company, and he agreed to have these defects repaired free of charge to the appellee under the provisions of the warranty given to him when the car was purchased. The maximum total estimate considered

for the corrections and repair of all the defects, which were complained of, was around $80. It can readily be seen that these defects are of a minor nature.

It has been held that under the Uniform Commercial Code where the buyer rejects the goods or chattels when delivered because they are nonconforming, an offer can be made by or on behalf of the seller to repair or cure the minor defects, which should be accepted by the buyer and recission could not be had. Code, 46-2-508 (1), as amended; *Wilson* v. *Scampoli,* D.C. App., 228 A.2d 848.

The appellee contends that Yeager Ford Sales was guilty of fraud in the sale of the automobile involved. There is no merit to this contention.

In the first place, if the defects amounted to a misrepresentation there was an offer made to correct all of the defects, which offer was refused by the appellee, and in order to constitute fraud any misrepresentation must be material and not of a minor nature. 8 M.J., *Fraud and Deceit,* § 7, p. 699; *Crislip* v. *Cain,* 19 W.Va. 438. Then, too, if fraud is relied on for rescission it must be asserted without delay after discovery. 8 M.J., *Fraud and Deceit,* § 39, p. 728; *Coffman* v. *Viquesney,* 76 W.Va. 84, 84 S.E. 1069; *Reiniger* v. *Piercy,* 77 W.Va. 62, 86 S.E. 926; *Matney* v. *Blakely,* 97 W.Va. 291, 124 S.E. 918. The appellee stated that he noticed some of the defects after driving the car to Chicago the first part of July, 1968, and he did not attempt to rescind until September 19, 1968.

It has long been held that where a purchaser has a right to rescind a contract for any breach in connection therewith, the breach must be of a material nature. This principle was stated in point 2 of the syllabus of the case of *J. W. Ellison, Son & Co.* v. *Flat Top Grocery Co.,* 69 W.Va. 380, 71 S.E. 391, in the following language: "Where a purchaser of chattels has right to rescind the contract, for breach of it, the breach must be in a material matter." Under the provisions of the Uniform Commercial Code where the goods or chattels have been accepted by the buyer, the defects or nonconformity must be of such

460

nature that they *substantially impair* the value of the goods before revocation of acceptance is possible. Code, 46-2-608 (1), as amended.

In any case where rescission is relied upon it must be made promptly, or within a reasonable time after the purchase and the buyer cannot use the chattel to a material degree and then attempt to rescind the contract of sale. *Shreve* v. *Casto Trailer Sales, Inc.,* 150 W.Va. 669, 149 S.E.2d 238. This principle is stated in point 4 of the syllabus of the case of *Shreve* v. *Casto Trailer Sales, Inc., supra,* wherein it is stated: "A rescission must be made promptly or within a reasonable time after the purchase or sale, and if such rescission is not made within a reasonable time the right to rescind is lost." This same principle is also contained in the provisions applicable thereto in the Uniform Commercial Code, (Code, 46-2-602 (1), as amended, and Code, 46-2-608 (2), as amended).

A reasonable time in which to make a rescission depends on the facts and circumstances of a particular case. Code, 46-1-204 (2), as amended; *Eggen* v. *M. and K. Trailers & Mobile Home Brok., Inc.,* 29 Colo. App._____, 482 P.2d 435. It should be noted that in the case at bar the purchaser had immediately, on July 5, 1968, after buying the automobile, driven it to Chicago where he first noticed a defect and then returned to his home in Coalwood, after which he drove it around in McDowell County, and on two separate occasions drove to the State of Tennessee, covering a period of over two and one-half months and driving it over 3400 miles before attempting to rescind the contract of sale by placing it on the seller's lot on September 19, 1968.

The case of *Wilson* v. *Scampoli, supra,* is quite similar to the case presented here. In that case a color television set had been purchased which had a defective picture and an offer was made to correct the minor defects covered by the warranty but was refused by the buyer's daughter, who demanded a new television set. It was held that rescission of the original sale could not be made, because under the provisions of the Uniform Commercial Code,

(Code, 46-2-508, as amended), the manufacturer should have the opportunity to correct minor defects and to make proper repairs of such defects. 17 A.L.R.3d, Uniform Commercial Code, Sales, page 1081.

In the case of *Lilley* v. *Manning Motor Company*, 262 N.C. 468, 137 S.E.2d 847, it was held that the purchaser of an automobile who received a warranty that all parts, with certain exceptions, were free from defects, was obligated to notify the dealer and to give him the opportunity to remedy the defects.

It appears from the facts and circumstances in the case at bar, and from the authorities cited herein dealing with the matter, that the purchaser of the automobile involved here was not entitled to rescind the contract of sale, and the offer to repair the defects should have been accepted by the purchaser.

The judgment of the Circuit Court of McDowell County is therefore reversed, the verdict of the jury is set aside, and this case is remanded to the Circuit Court for a new trial which is awarded here to the appellant, Yeager Ford Sales, Inc.

*Judgment reversed; verdict set aside; new trial awarded.*